[No. D023687. Fourth Dist., Div. One. July 21, 1995.]

TONY EDWARD HICKS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Francis J. Bardsley, Public Defender, William J. La Fond, Jeffrey M. Reilly and Greg S. Maizlish, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Anthony Lovett, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**BENKE, Acting P. J.**—This petition presents a challenge to the constitutionality of the statutory framework for certifying 14- and 15-year-old offenders for trial as adults. Briefly summarized, since 1976, minors who are 16 or older at the time of committing a crime can under certain circumstances be tried as adults in criminal court, but 14- and 15-year-olds have always been tried as juveniles. As of January 1, 1995, however, the Legislature opened the door of the criminal courthouse to these younger offenders.

Now, under Welfare and Institutions Code section 707,[1] subdivision (d), a minor who is 14 or 15 years of age at the time of committing a serious offense such as murder, robbery with personal use of a firearm, and forcible rape, among other crimes, will be tried as a juvenile unless the People move for a remand to the criminal courts and prove the minor is not amenable to care, treatment and training in juvenile court. If, however, a murder falls into one of three special categories—first or second degree murder where the minor personally kills the victim; first or second degree murder where the minor, acting with intent to kill the victim, solicits or assists another person in doing the killing; and first degree murder where, though not the actual killer, the minor acts with indifference to human life and as a major participant in a special circumstances felony-murder—the minor "shall be presumed" unfit for trial as a juvenile under section 707, subdivision (e), unless he proves he is amenable to juvenile court treatment.

Tony Edward Hicks (Tony) was 14½ when he allegedly committed murder in the first degree by personally killing the victim. He asserts the statutory presumption of unfitness violates his right to equal protection and due process under the law. For reasons more fully explained below, we hold the statute is constitutional.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On January 21, 1995, Tony became part of a group of other "Black Mob" gang members planning to rob a pizza delivery man. The plan called for one

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]We summarize the facts from the material contained in Tony's brief. Although Tony fails to provide support from the record, the People would seem to have no objection to his version

of the girls to order a pizza to be delivered from DiMille's and for Tony to hold a gun on the delivery man while the others took the pizza.

Tony waited at the appointed location and confronted the delivery man with a gun. When the man refused to turn over the pizza, Tony shot him and fled. The shot was fatal. Tony was arrested three days later.[3]

The People filed a petition alleging Tony committed murder, attempted armed robbery, burglary and other offenses. The petition further alleged Tony was within the jurisdiction of the juvenile court pursuant to section 602 but was not a fit and proper subject to be dealt with under juvenile court law under section 707, subdivision (e)(1), because he committed the crime of murder by personally killing the victim.

Tony moved to strike the section 707, subdivision (e)(1), allegation on the ground the presumption of unfitness violated his equal protection and due process rights. The court denied the motion and, following a fitness hearing which lasted several weeks, decided Tony was unfit for consideration as a juvenile, ordered him to appear in adult court and set a date for his preliminary examination.

Tony filed a petition for writ of mandate challenging the denial of his motion to strike. We issued an order to show cause and stayed further proceedings.

## DISCUSSION

As a 14½-year-old who allegedly committed first degree murder by personally killing his victim, Tony is presumed unfit for trial in juvenile court under section 707, subdivision (e)(1). Tony maintains the statute is facially unconstitutional. He argues applying a presumption of unfitness to him and certain other 14- and 15-year-old offenders—but not all 14- and 15-year-olds charged with serious crimes—creates disparate treatment among the members of the class, is without any rational foundation and denies him equal protection under the law. Tony also asserts the presumption of unfitness offends due process because it is irrational and arbitrary.

---

of the facts in light of their position that "the underlying facts are largely irrelevant to the issue now before the court."

[3]Tony has been identified as one of three males who stole a gun from the home of Thomas Leone a day before the murder. The manufacturer of an empty cartridge found at the scene of the murder matched the manufacturer of Leone's ammunition. On the day of the murder, Tony and two other juveniles are also alleged to have stolen a shotgun from the home of Tony's grandfather.

## I

We begin by examining the statutory framework. Section 707 gives rise to certain presumptions regarding fitness for trial in juvenile court, presumptions which until recently were limited to minors 16 years old or older at the time of committing the crime. For all but the specific serious offenses set out in section 707, subdivision (b), if the petition alleges a minor 16 or older committed a crime, the minor is in general terms deemed fit for trial as a juvenile. (§ 707, subd. (a).)[4] The court may nevertheless remand the minor from juvenile to criminal court if the People move to certify him for trial as an adult and carry their burden of proof at the fitness hearing that the minor is not amenable to the available care, treatment and training in juvenile court based on (1) criminal sophistication, (2) necessary period for rehabilitation, (3) previous delinquent history, (4) past rehabilitative efforts and (5) the seriousness of the offense (the "five statutory criteria"). (§ 707, subd. (a); Cal. Rules of Court, rule 1482(a); Walker, 1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 5.32, p. 163.)

If, on the other hand, the petition alleges a minor 16 or older committed murder, arson of an inhabited building, armed robbery or other serious offenses specified in section 707, subdivision (b),[5] there is a presumption the minor is unfit for treatment in juvenile court and the burden is on the minor

[4]Section 707, subdivision (a), provides in pertinent part: "In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any criminal statute or ordinance except those listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit, the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based upon an evaluation of the following criteria: [¶] (1) [t]he degree of criminal sophistication exhibited by the minor[;] [¶] (2) [w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction[;] [¶] (3) [t]he minor's previous delinquent history[;] [¶] (4) [s]uccess of previous attempts by the juvenile court to rehabilitate the minor[;] [and] [¶] (5) [t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor."

[5]The other crimes in section 707, subdivision (b), include forcible rape; forcible sodomy; child molestation (Pen. Code, § 288); forcible oral copulation; forcible foreign object penetration; kidnapping for ransom; kidnapping for robbery; kidnapping with bodily harm; attempted murder; assault with a firearm; assault by means of force likely to produce great bodily injury; discharge of a firearm into an inhabited building; specified offenses against the aged or disabled (Pen. Code, § 1203.09); personal use of a firearm in the commission of a felony; any felony in which the minor personally uses specified weapons (Pen. Code, § 12020); witness intimidation or bribery; specified controlled substances offenses (Health & Saf. Code, § 11055, subd. (e)); violent felonies as defined in the street terrorism and enforcement act; forcible escape from a juvenile facility where great bodily harm is intention-

to convince the juvenile court otherwise on each of the five statutory criteria. (§ 707, subd. (c);[6] Cal Rules of Court, rule 1483(a); *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 805 [210 Cal.Rptr. 204, 693 P.2d 789].)

Effective January 1, 1995, section 707 was amended to allow younger minors—minors who are 14 or 15 years old at the time of allegedly committing the crime—to be tried as adults under the circumstances provided in section 707, subdivisions (d) and (e). (Stats. 1994, ch. 448, § 3 [Assem. Bill No. 1948 (AB No. 1948)]; Stats. 1994, ch. 453, § 9.5 [Assem. Bill No. 560 (AB No. 560)].) A 14- or 15-year-old will be tried as a juvenile where the petition alleges murder, robbery with personal use of a firearm, forcible rape or other serious crimes[7] unless the People move for a remand from juvenile to criminal court and prove[8] the minor is not amenable to

---

ally inflicted on an employee; torture; aggravated mayhem; armed carjacking; kidnapping to commit specified sex offenses (Pen. Code, § 208, subd. (d)); kidnapping during a carjacking (Pen. Code, § 209.5); willfully discharging a firearm from a motor vehicle at another person; and exploding or attempting to explode a destructive device with the intent to commit murder.

[6]Section 707, subdivision (c), provides in pertinent part: "With regard to a minor alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any of the offenses listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless the juvenile court concludes, based upon evidence, which evidence may be of extenuating or mitigating circumstances, that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based upon an evaluation of each of the following criteria: [¶] (1) [t]he degree of criminal sophistication exhibited by the minor[;] [¶] (2) [w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction[;] [¶] (3) [t]he minor's previous delinquent history[;] [¶] (4) [s]uccess of previous attempts by the juvenile court to rehabilitate the minor[;] [and] [¶] (5) [t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor."

[7]The other crimes in section 707, subdivision (d)(2), include forcible sodomy, forcible oral copulation, forcible foreign object penetration; kidnapping for ransom; kidnapping for robbery; kidnapping with bodily harm; kidnapping to commit specified sex offenses (Pen. Code, § 208, subd. (d)); willful discharge of a firearm from a motor vehicle at another person where the minor personally uses a firearm; personally discharging a firearm into an inhabited building; specified controlled substances offenses (Health & Saf. Code, § 11055, subd. (e)); forcible escape from a juvenile facility where great bodily harm is intentionally inflicted on an employee; torture; aggravated mayhem; assault with a firearm where the minor personally uses the firearm; attempted murder; rape where the minor personally uses a firearm; burglary where the minor personally uses a firearm; kidnapping where the minor personally uses a firearm; exploding or attempting to explode a destructive device with the intent to commit murder; kidnapping during a carjacking; and carjacking where the minor personally uses a firearm.

[8]We are aware of no existing rule of court or other authority on the burden of proof under section 707, subdivision (d) or (e). Tony has further presented no argument on the nature or

juvenile court treatment in light of the five statutory criteria. (§ 707, subd. (d)(1);[9] Hall, Cal. Juvenile Court Practice (Cont.Ed.Bar Supp. 1995) § 5.27, p. 61.)

There is also a presumption of unfitness which applies to younger minors. That is, a minor who is 14 or 15 years of age at the time of allegedly committing the crime "shall be presumed" unfit for trial as a juvenile when the petition alleges one of the following special types of murder: murder in the first or second degree by personally killing the victim (§ 707, subd. (e)(1)), murder in the first or second degree where the minor, acting with intent to kill the victim, aids, abets, solicits or assists any person to kill the victim (§ 707, subd. (e)(2)), and murder in the first degree where the minor is not the actual killer but acts with indifference to human life and as a major participant in a special circumstances felony murder (§ 707, subd. (e)(3)). (§ 707, subd. (e);[10] see Hall, Cal. Juvenile Court Practice, *supra*, § 5.27, p.

---

effect of the evidentiary standards imposed by the statute. As such, and because the language of section 707, subdivision (d), closely tracks section 707, subdivision (a), and the language of section 707, subdivision (e), parallels section 707, subdivision (c), we will assume the same general burdens of proof apply.

[9]Section 707, subdivision (d)(1), provides in pertinent part: "In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she had attained the age of 14 years but had not attained the age of 16 years, of any of the offenses set forth in paragraph (2), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence that the petitioner or the minor may wish to submit, the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based upon an evaluation of the following criteria: [¶] (A) [t]he degree of criminal sophistication exhibited by the minor[;] [¶] (B) [w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction[;] [¶] (C) [t]he minor's previous delinquent history[;] [¶] (D) [s]uccess of previous attempts by the juvenile court to rehabilitate the minor[;] [and] [¶] (E) [t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor."

[10]Section 707, subdivision (e), provides in pertinent part: "This subdivision shall apply to a minor alleged to be a person described in Section 602 by reason of the violation, when he or she had attained the age of 14 years but had not attained the age of 16 years, of the offense of murder in which it is alleged in the petition that one of the following exists: [¶] (1) [i]n the case of murder in the first or second degree, the minor personally killed the victim; [¶] (2) [i]n the case of murder in the first or second degree, the minor acting with intent to kill the victim, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any person to kill the victim[;] [or] [¶] (3) [i]n the case of murder in the first degree, while not the actual killer, the minor, acting with reckless indifference to human life and as a major participant in a felony enumerated in paragraph (17) of subdivision (a) of Section 190.2, or an attempt to commit that felony, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission or attempted commission of that felony and the commission or attempted commission of that felony or the immediate flight therefrom resulted in the death of

61.) The minor bears the burden of proof[11] in rebutting the presumption by showing he is amenable to juvenile court treatment based on the five statutory criteria. (§ 707, subd. (e).)

## II

 The first question we address is the appropriate standard of review for challenges to section 707, subdivision (e), on equal protection or substantive due process grounds. As summarized in *In re Arthur W.* (1985) 171 Cal.App.3d 179 [217 Cal.Rptr. 183], if a statute adversely affects a "fundamental right," is " 'protected by [a] specific guarantee of the United States Constitution,' " involves a "suspect classification" or " 'discrete and insular minority' "[12] or has an impact on " 'the integrity of the political process,' " we apply a strict scrutiny standard and look for a compelling state interest that cannot be accomplished by less restrictive means to uphold the statute. (*Id.* at p. 185.) In all other cases, the statute is vested with a presumption of constitutionality and need only bear a rational relationship to some conceivable legitimate legislative purpose. (*Ibid.*)

 We are not concerned with a suspect classification here, i.e., a classification "marked by an immutable characteristic grounded in the accident of birth and resulting in a stigma of inferiority and second class citizenship." (*Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544, 551 [173 Cal.Rptr. 539].) Age is not an immutable characteristic and is not recognized as a suspect classification under either the United States or California Constitutions. (*In re Arthur W., supra,* 171 Cal.App.3d at p. 186; *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 418 [205 Cal.Rptr. 576]; see also

---

that victim. [¶] Upon motion of the petitioner made prior to the attachment of jeopardy, the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit, the minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless the juvenile court concludes, based upon evidence, which evidence may be of extenuating or mitigating circumstances, that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based upon an evaluation of each of the following criteria: [¶] (A) [t]he degree of criminal sophistication exhibited by the minor[;] [¶] (B) [w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction[;] [¶] (C) [t]he minor's previous delinquent history[;] [¶] (D) [s]uccess of previous attempts by the juvenile court to rehabilitate the minor[;] [and] [¶] (E) [t]he circumstances and gravity of the offenses alleged in the petition to have been committed by the minor."

[11]See footnote 8, *ante.*

[12]The terms "suspect classification" and "discrete and insular minority" are frequently used interchangeably. (*In re Arthur W., supra,* 171 Cal.App.3d at p. 186.) For our purposes, there is no need to differentiate between the two.

*Massachusetts Bd. of Retirement* v. *Murgia* (1976) 427 U.S. 307, 313 [49 L.Ed.2d 520, 524-525, 96 S.Ct. 2562].) Moreover, Tony is not arguing he received disparate treatment solely because of his age. That is, he does not challenge the Legislature's power to lower the age at which a minor may be certified to adult court from 16 to 14; to the contrary, Tony complains the statute treats 14-year-olds like him differently than other offenders in the same age bracket.

There is further no contention in this case that the statute affects the integrity of the political process.

Finally, there is no express constitutional guarantee giving a minor the right to trial in juvenile court, let alone affording him a presumption of fitness for trial in juvenile court. Nor is there authority establishing the rebuttable presumption impacts a fundamental right implicitly guaranteed by the Constitution.[13] (See *In re Harris* (1993) 5 Cal.4th 813, 835, 837 [21 Cal.Rptr.2d 373, 855 P.2d 391].)

Absent a suspect classification, an effect on the integrity of the political process, a specific constitutional guarantee or fundamental right, we presume section 707, subdivision (e)(1), is constitutional and limit our review to whether the statute is rationally related to a proper legislative goal. (*In re Arthur W.*, *supra*, 171 Cal.App.3d at p. 187.)

## III

Section 707, subdivision (e), began as AB No. 560. The bill was a reaction to legitimate public anxiety about the increase in juvenile crime in terms of numbers and level of violence. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 560 (1993-1994 Reg. Sess.) as amended Apr. 21, 1994, at p. 4.) The Senate analysis quotes the bill's author (Peace) describing the need for legislation as follows: "There is a finite number of juveniles who are under 16 who do not belong in the juvenile court system and need to be dealt with in the adult court. . . . AB 560 is a rational response to the legitimate public desire to address what is a serious problem. . . . AB 560 attempts to protect the public and save those youngsters who we can save." (*Ibid.*) Pointing out

---

[13]Tony cites language from *Ramona R.* v. *Superior Court*, *supra*, 37 Cal.3d 802, 810 (and also a 1973 law review article on reform of the Kentucky juvenile law system) to suggest certification affects a fundamental right because it exposes the minor to the most severe punishment the juvenile court can inflict. We note, however, the issue in *Ramona R.* (use immunity) was markedly different from the issue before us. Use immunity for the minor's statements at a fitness hearing or to a probation officer is integral to the constitutional privilege against self-incrimination. (*Ibid.*) We see no rationale for an analogy between use immunity and the rebuttable presumption of unfitness.

the juvenile arrest rate for violent crime increased 63.7 percent since 1987 while the adult rate went up only 20.2 percent, the analysis goes on to explain: "The fitness age provisions of this bill target 14- and 15-year-olds. In 1992, the violent arrest rate per 100,000 for 14-year-olds was 717.9, and for 15-year-olds, 1,082. The percentage of 15[-] year-olds arrested for violent crimes is disproportionate—more than double—to their percentage of the population. [Fourteen] and [fifteen]-year-olds account for 4.75 percent of total violent arrests. Compared to their combined 2.54 [percent] of the population, this has obvious disproportional impact." (*Id.* at p. 7.)

We note further, during the time AB No. 560 was working its way through legislative channels, there were a number of other bills pending in the Legislature also focusing on the presumption of unfitness—Senate Bill No. 23 (Leonard), Senate Bill No. 13 (McCorquordale),[14] and Assembly Bill Nos. 136 and 863 (Quackenbush)—among others. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 560, *supra*, as amended Apr. 21, 1994, at p. 8.) At the time, the Legislature was also considering enactments in sister states, among them laws from New York and Idaho mandating trial in adult court for 14- to 18-year-olds accused of specified crimes, as well as an untested plan in Colorado to impose adult-length sentences on 14- to 18-year-olds to "send[] its youth the message that violent crimes will result in longer, serious sentences." (*Id.* at pp. 8-9.)

 Considering the legislative history in light of the steady lowering of certification for minors from 21—to 18—to 16 years of age (Stats. 1971, ch. 1748, § 66, p. 3766; Stats. 1976, ch. 1071, § 28.5, pp. 4825-4826; Stats. 1977, ch. 1150, § 2, pp. 3693-3694; Stats. 1979, ch. 944, § 19, pp. 3263-3265; Stats. 1979, ch. 1177, § 2, pp. 4600-4602), the clear picture which emerges is the Legislature recognized (1) 14- and 15-year-olds, like their older counterparts, now exhibit a degree of criminal sophistication and antisocial behavior comparable to the worst adult offenders; (2) some young offenders do not realistically belong in the juvenile court system; and (3) there are a number of ways to weed out minors from whom society needs protection and for whom consideration as juveniles is unlikely to make a difference. Section 707, subdivision (e), appears rationally designed to promote that legislative goal.

---

[14]The April 1994 amendment of AB No. 560 applied a presumption of unfitness to 14- and 15-year-olds charged with murder. At that point, Senate Bill No. 13 was closer in form to section 707, subdivisions (e)(1), as finally passed: Senate Bill No. 13 applied the presumption of unfitness to 14- or 15-year-olds charged with (1) murder where the minor personally killed the victim or (2) kidnapping for the purpose of committing a murder in which the minor personally killed the victim. (Sen Com. on Judiciary, Analysis of Assem. Bill No. 560, *supra*, as amended Apr. 21, 1994, at p. 8.)

First, section 707, subdivision (e), imposes a presumption of unfitness on a 14- or 15-year-old offender for the most serious of crimes—murder where the minor has a certain direct culpability. Thus, a 14- or 15-year-old like Tony is subject to the presumption of unfitness for murder in the first degree (premeditation and malice required) or murder in the second degree (malice required) where he performed the actual killing. (§ 707, subd. (e)(1).) Although not the actual killer, a 14- or 15-year-old is also subject to the presumption for (1) first degree murder (premeditation and malice required) or second degree murder (malice required) where the minor intends to kill the victim and solicits or assists another person in doing the killing (§ 707, subd. (e)(2)) or (2) a first degree murder (premeditation and malice required) where the minor acts with reckless indifference to human life and is a major participant in a special circumstances felony murder (§ 707, subd. (e)(3)). By contrast, the presumption of unfitness will not apply to a 14- or 15-year-old for a vicarious responsibility murder unless the minor intended to kill the victim or is a major player in certain underlying, very serious felonies.

Second, having apparently rejected the approach of other states requiring the automatic transfer of 14- and 15-year-olds to criminal court, the Legislature adopted a rebuttable presumption to give younger offenders an opportunity to show why they should be treated as juveniles. Applying such a rebuttable presumption of unfitness to 16-year-olds charged with serious and violent crime is a proper exercise of legislative power. (*Sheila O.* v. *Superior Court* (1981) 125 Cal.App.3d 812, 817 [178 Cal.Rptr. 418]; *People* v. *Superior Court (Steven S.)* (1981) 119 Cal.App.3d 162, 177 [173 Cal.Rptr. 788, 22 A.L.R.4th 1140].) We see no reason why it should not be an equally proper exercise of legislative power when applied to 14- and 15-year-olds.

IV

The fact that all 14- and 15-year-olds charged with serious crimes are not presumed unfit for trial as juveniles does nothing to detract from the constitutionality of section 707, subdivision (e)(1). "[N]either the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citation] precludes classification by the Legislature or requires uniform operation of the law with respect to persons who are different." (*In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201].) Tony is different from 14- and 15-year-olds charged with other serious crimes: he is charged with personally killing his victim. The most precious thing an individual may take from another human being is life. It is a crime with inalterable consequences for the victim, the victim's family and society. The

Legislature has the power to determine Tony and other 14- and 15-year-olds who personally kill another person pose a greater threat to society than 14- and 15-year-old offenders who do not, and declare they will be presumed unfit for consideration as juveniles unless they present evidence to the contrary.[15]

Similarly, all 14- and 15-year-olds charged with murder are not, so to speak, created equal. Some, like Tony, who personally perform the killing (§ 707, subd. (e)(1))—and others who either intend to kill the victim and assist or solicit someone else to do the killing (§ 707, subd. (e)(2)) or act with reckless indifference to human life as a major participant in a special circumstances felony murder (§ 707, subd. (e)(3))—have a direct and active involvement in the murder. They are different from the more attenuated situation of a 14- or 15-year-old who, for example, may be "along for the ride" to scare another juvenile, has a toy gun, and unexpectedly finds himself charged for murder in a drive-by shooting.

▇ To satisfy the rational relationship test, " ' ". . . the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." ' " (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 79 [177 Cal.Rptr. 566, 634 P.2d 917], quoting *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 487-488 [99 L.Ed. 563, 571-572, 75 S.Ct. 461], fn. omitted.) ▇ Clearly, the Legislature here was attempting to balance the interests of society and the juveniles by reserving the presumption of unfitness for the class of youthful offenders who commit the most serious of crime—murder—and whose culpability in the crime is the greatest. We conclude section 707, subdivision (e)(1), bears a rational relationship to a proper legislative goal and is constitutional.

---

[15]In attempting to argue the presumption is irrational, Tony uses two hypotheticals. In the first (case No. 1), a minor just under 16 years of age tortures an elderly woman for hours, rapes her, shoots her and leaves her for dead, but the woman does not die. Charged with attempted murder, torture and rape, the minor in case No. 1 is not subject to the presumption of unfitness. In the second hypothetical (case No. 2), a minor comes home from school on her 14th birthday, sees her alcoholic father beating her mother, mistakenly thinks her father will kill her mother, and shoots and kills her father. The minor in case No. 2 is charged with murder and is subject to the presumption of unfitness for juvenile court.

The hypotheticals do not, however, compel the conclusion that the presumption of unfitness is irrational. Like the rest of our criminal justice system, the presumption is founded on the notion that the more serious the crime (the taking of a life is at the top of the list), the more severe the consequences. It must also be remembered the presumption is the starting point: under section 707, subdivision (d)(2), the court may well certify the minor in case No. 1 for trial as an adult and, under section 707, subdivision (e), decide the minor in case No. 2 should be tried as a juvenile.

The petition is denied. The stay issued on June 7, 1995, will be vacated when this opinion becomes final.

Huffman, J., and Nares, J., concurred.

Petitioner's application for review by the Supreme Court was denied October 19, 1995. Mosk, J., was of the opinion that the application should be granted.