113 Cal.Rptr.2d 778 (2001)
93 Cal.App.4th 1266
The PEOPLE, Plaintiff and Respondent,
v.
Theotis SIMMONS, Defendant and Appellant.
No. C036269.
Court of Appeal, Third District.
November 26, 2001.
Review Granted February 20, 2002.
Review Dismissed May 15, 2002.
*781 Linda Buchser, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger, Judy Kaida and Charles V. Fennessey, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
SCOTLAND, P.J.
On March 12, 2000, 16-year-old defendant Theotis Simmons and two accomplices entered a store and robbed its owner and customers at gunpoint.
Defendant's bad conduct was accompanied by bad timing. Five days earlier, *782 California voters approved Proposition 21, known as the "Gang Violence and Juvenile Crime Prevention Act of 1998." Proposition 21 amended Welfare and Institutions Code section 707, subdivision (d) (hereafter § 707(d)) to give a prosecutor the discretion to prosecute a minor either in criminal court or juvenile court when the minor is alleged to have committed a specified crime at a specified ageincluding defendant's age and the crimes that he committed. (Further section references are to the Welfare and Institutions Code unless otherwise specified.)
Pursuant to section 707(d), the People filed an information in criminal court charging defendant with four counts of robbery. (Pen.Code, § 211.) The information alleged that defendant was 16 years of age at the time of the crimes (§ 707, subds.(b) & (d)(1)) and personally used a firearm during the commission of the robberies (Pen.Code, § 12022.53, subd. (b)). After the trial court denied defendant's motion to have the criminal case dismissed and the matter remanded to juvenile court, defendant entered negotiated pleas of no contest to two counts of second degree robbery and admitted being armed with a firearm during the commission of one of the robberies. (Pen.Code, § 12022, subd. (a)(1).) The remaining charges were dismissed, and defendant was sentenced to state prison for an aggregate term of six years. He appeals.
In the published parts of this opinion, we reject defendant's claims that Proposition 21 is invalid because it violates the single subject rule, the separation of powers doctrine, and principles of equal protection and due process of law. In the unpublished parts, we address his remaining contentions and find merit in only one of them; an error in the abstract of judgment must be corrected.
Accordingly, we shall affirm the judgment but direct the trial court to amend the abstract of judgment.

DISCUSSION

I
Prior to Proposition 21, when a minor was accused of having committed a crime, the prosecutor was required to bring the proceedings in juvenile court (former § 707, Stats.1998, ch. 936, § 21.5), except for specified crimes for which prosecution in criminal court was mandatory (§ 602, subd. (b)) or in specified situations where the minor previously had been found not to be a fit and proper subject to be dealt with under juvenile court law (§ 707.01). Upon motion of the prosecutor, the juvenile court would then conduct a fitness hearing to determine, based upon statutorily specified factors, whether the minor should remain in the juvenile system or be transferred to criminal court (former § 707, subd. (a)). Thus, except where prosecution in criminal court was mandated by statute, the juvenile court made the decision as to whether a minor was not a fit and proper subject for juvenile court jurisdiction and would be exposed to adult penalties rather than the more benevolent dispositions available under the juvenile court laws.
Section 26 of Proposition 21 amended section 707(d), replacing it in its entirety with a new provision which provides that, if a minor is 16 years old or older at the time he or she is alleged to have committed a specified qualifying offense, or is 14 years old or older at the time he or she is alleged to have committed a specified qualifying offense, the district attorney has discretion to either file a petition against the minor in juvenile court or prosecute the minor in criminal court. (§ 707(d)(1), (2) & (3).)
*783 If the district attorney elects to file a petition in juvenile court, the court must, "upon motion of the petitioner made prior to the attachment of jeopardy," conduct a fitness hearing to determine whether the juvenile, if found guilty of the charge, is subject to adult or juvenile penalties. (§ 707, subds.(b), (c).) If the district attorney elects to prosecute the minor in criminal court and he or she is found guilty, the minor generally "shall be subject to the same sentence as an adult convicted of the identical offense" except in specified circumstances. (Pen.Code, § 1170.17, subd. (a).) Accordingly, by giving the prosecuting attorney the discretion to file charges against a minor directly in criminal court, Proposition 21 limits the court's sentencing discretion.

II
Defendant contends that Proposition 21 violates article II, section 8, subdivision (d) of the California Constitution, which provides that an initiative measure may not embrace "more than one subject." In defendant's view, Proposition 21 is infirm because it embraces what he perceives as three distinct subjects: (1) the juvenile justice system; (2) criminal gang activity; and (3) the sentence enhancements for repeat offenders enacted by Propositions 8 and 184. The contention fails.[1]
The initiative process is a power reserved by the people, not one granted to them. (Associated Home Builders etc., Inc. v. City of Livermore (1976) 18 Cal.3d 582, 591, 135 Cal.Rptr. 41, 557 P.2d 473.) It is the duty of courts to jealously guard this right, which is one of the most precious rights of our democratic process. (Ibid.) Thus, courts must "`apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' [Citations.]" (Ibid.)
Accordingly, "the single-subject requirement should not be interpreted in an unduly narrow or restrictive fashion that would preclude the use of the initiative process to accomplish comprehensive, broad-based reform in a particular area of public concern." (Senate of the State of Cal. v. Jones (1999) 21 Cal.4th 1142, 1157, 90 Cal.Rptr.2d 810, 988 P.2d 1089.)
The standard consistently applied in this context is that an initiative measure comports with the single-subject rule "`if, despite its varied collateral effects, all of its parts are "reasonably germane" to each other,' and to the general purpose or object of the initiative. [Citations.]" (Brosnahan v. Brown (1982) 32 Cal.3d 236, 245, 186 Cal.Rptr. 30, 651 P.2d 274, orig. italics, citing Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 230, 149 Cal. Rptr. 239, 583 P.2d 1281; accord Senate of the State of Cal. v. Jones, supra, 21 Cal.4th at p. 1157, 90 Cal.Rptr.2d 810, 988 P.2d 1089; Legislature v. Eu (1991) 54 Cal.3d 492, 512, 286 Cal.Rptr. 283, 816 P.2d 1309.)
The purpose of this rule is to minimize voter confusion and logrolling, which is the practice of adding to one initiative several separate subjects that might not gain voter approval individually. (Brosnahan v. Brown, supra, 32 Cal.3d at p. 267, 186 Cal.Rptr. 30, 651 P.2d 274; Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra, 22 Cal.3d *784 at p. 231, 149 Cal.Rptr. 239, 583 P.2d 1281.)
For example, in Brosnahan v. Brown, supra, 32 Cal.3d 236, 186 Cal.Rptr. 30, 651 P.2d 274, the California Supreme Court held that Proposition 8, the "Victims' Bill of Rights," did not violate the single-subject rule even though it contained provisions relating to a right to restitution by crime victims, school safety, evidentiary rule changes, restrictions on bail, unlimited use of prior convictions for purposes of impeachment and sentence enhancement, abolition of the diminished capacity defense, limitations on plea bargaining, restrictions to commitment to the California Youth Authority, sentence enhancements for habitual criminals, and the consideration at sentencing of statements of crime victims or their families. (Id. at pp. 246-247, 186 Cal.Rptr. 30, 651 P.2d 274.)
Proposition 8 met the "reasonably germane" standard because each of the measure's facets bore a common concern or general object of promoting the rights of actual or potential crime victims by strengthening the procedural and substantive safeguards for victims in our criminal justice system. (Brosnahan v. Brown, supra, 32 Cal.3d at p. 247, 186 Cal.Rptr. 30, 651 P.2d 274; see also Raven v. Deukmejian (1990) 52 Cal.3d 336, 347, 276 Cal.Rptr. 326, 801 P.2d 1077 [upholding Proposition 115, the "Crime Victims Justice Reform Act," concluding its various provisions formed a comprehensive criminal justice reform package]; Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra, 22 Cal.3d at p. 231, 149 Cal.Rptr. 239, 583 P.2d 1281 [upholding Proposition 13, a tax initiative, on the ground that its varied provisions were reasonably germane to the general subject of property tax relief]; Fair Political Practices Com. v. Superior Court (1979) 25 Cal.3d 33, 37-43, 157 Cal.Rptr. 855, 599 P.2d 46 [rejecting a single-subject challenge to Political Reform Act of 1974 despite its multiple complex features].)
Like Propositions 8, 13, 115, and the Political Reform Act of 1974, the various provisions of Proposition 21 "unite to form a comprehensive ... reform package" (see Raven v. Deukmejian, supra, 52 Cal.3d at p. 347, 276 Cal.Rptr. 326, 801 P.2d 1077), all the parts of which are reasonably germane to each other and to the general purpose of the initiative.
The provisions of Proposition 21 reflect a focused response to an increase in serious and violent juvenile criminal conduct, which is frequently gang-related. Thus, sections 3 through 10 and section 13 of the initiative amend laws enacted to address the problem of violent street gangs; section 11 adds gang-related murder as a special circumstance; section 12 pertains to graffiti and vandalism, which are well-known and pervasive practices of gangs and juveniles; and sections 18 through 34 amend various portions of the Welfare and Institutions Code and relate to altering the juvenile justice system and laws regarding juvenile gang-related crimes.
All of those provisions are reasonably germane to promoting the goal of reducing juvenile and gang-related crime.
Defendant disagrees, arguing sections 14 through 17 of the initiative, which amend portions of the "three strikes law," are not reasonably germane to that goal. Sections 15 and 17 add to or amend the lists of serious and violent felonies contained in Penal Code sections 667.5 and 1192.7, which lists are used to trigger sentence enhancements for defendants who have more than one conviction for such offenses. Sections 14 and 16 modify the three strikes law (Pen.Code, §§ 667, 1170.12) to ensure that any amendments to Penal Code sections 667.5 and 1192.7 between *785 June 30, 1993, and March 8, 2000 (the effective date of Proposition 21) are incorporated therein.
We reject defendant's assertion that these sections are unrelated to the goals of Proposition 21. In section 2 of the initiative, the People declare that, although the three strikes law has reduced overall crime, violent juvenile crime has been resistant to this trend and juvenile and gangrelated crimes are increasing (Prop.21, § 2(a)-(c)) because "[t]he juvenile justice system is not well-equipped to adequately protect the public from violent and repeat serious juvenile offenders" (Prop.21, § 2(i)). The initiative notes that resources of the juvenile justice system are spent disproportionately on violent and serious offenders, who have little chance of being rehabilitated, which drains resources from those juveniles who have a potential for rehabilitation. (Prop.21, § 2(j).) Thus, the initiative states that "[d]ramatic changes are needed in the way we treat juvenile criminals, criminal street gangs, and the confidentiality of the juvenile records of violent offenders if we are to avoid the predicted, unprecedented surge in juvenile and gang violence." (Prop.21, § 2(k).)
Accordingly, Proposition 21, including its amendments to the three strikes law found in sections 14 through 17 of the initiative, reflects the People's intent to increase the prosecution of violent juvenile offenders as if they were adults, thereby subjecting them to the three strikes law in greater numbers in hopes of decreasing juvenile crime and increasing public safety. The amendment of the three strikes law was intended to apply to juvenile and gangrelated crimes. The fact that the amendments also apply to adult criminals does not render the initiative infirm under the single-subject rule.
Defendant also contends that Proposition 21 violates the single-subject rule because it transfers from judges to prosecutors the governmental authority and discretion to decide whether violent juvenile offenders will be tried in juvenile court or criminal court. (Citing Senate of the State of Cal. v. Jones, supra, 21 Cal.4th at pp. 1167-1168, 90 Cal.Rptr.2d 810, 988 P.2d 1089 [holding that Proposition 24 violated the single-subject rule because it combined a transfer of the power of reapportionment from the Legislature to the Supreme Court and unrelated provisions relating to legislators' pay].)
However, the transfer of discretion to determine whether a violent juvenile offender should be prosecuted in juvenile court or criminal court is reasonably germane to the general purpose of the initiative, which is to protect the public's safety by decreasing juvenile crime. This decrease is accomplished not only by increasing the prosecutions of violent juvenile offenders in criminal court, with a concomitant increase in the penalties imposed, but by freeing up the resources of the juvenile court to deal with less violent juvenile offenders who are more amenable to rehabilitation. If the prosecutor is authorized to charge violent juvenile offenders in criminal court without resort to a fitness hearing in the juvenile court, this enables the juvenile court to use its limited resources more effectively to rehabilitate larger numbers of nonviolent juvenile offenders.
For all of the reasons stated above, Proposition 21 does not violate the single-subject rule.

III
Defendant next contends that section 707(d) as amended by Proposition 21 violates the separation of powers doctrine (Cal.Const., art. III, § 3) because it transfers *786 from the judiciary to the prosecution the authority to determine whether certain minors should be tried in the criminal system or whether they are fit and proper subjects for juvenile court treatment. According to defendant, "the determination of venue, if not predetermined by statute, is an inherently judicial function that cannot be decided exclusively by the prosecution in a criminal case." Defendant also argues that the transfer of power to decide whether certain minors should be tried in criminal court enables prosecutors to limit trial court sentencing discretion in that the courts must sentence minors tried in the adult criminal system to adult criminal sentences rather than applying the more lenient penalties imposed by the juvenile system.[2]
As we will explain, defendant's separation of powers argument lacks merit.
Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."
The legislative branch bears the sole responsibility and power to define criminal charges and to prescribe punishment;[3] the executive branch has the sole discretion to decide what crime to charge; and the judicial branch imposes sentence within the legislatively determined limits for the chosen crime. (People v. Birks (1998) 19 Cal.4th 108, 134, 77 Cal.Rptr.2d 848, 960 P.2d 1073; People v. Navarro (1972) 7 Cal.3d 248, 258, 102 Cal.Rptr. 137, 497 P.2d 481.) Once the executive power has been exercised by the filing of a criminal charge, "the process which leads to acquittal or to sentencing is fundamentally judicial in nature." (People v. Tenorio (1970) 3 Cal.3d 89, 94, 89 Cal.Rptr. 249, 473 P.2d 993.)
The primary purpose of the separation-of-powers doctrine "is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government." (Parker v. Riley (1941) 18 Cal.2d 83, 89, 113 P.2d 873.) However, "[t]he doctrine has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another." (Id. at p. 90, 113 P.2d 873; accord Davis v. Municipal Court (1988) 46 Cal.3d 64, 76, 249 Cal.Rptr. 300, 757 P.2d 11.)
Defendant cites no apposite authority in support of his assertion that a determination of venue is inherently a judicial function. To the contrary, at least one other jurisdiction has held that a legislative grant of the option to select the forum for the prosecution of cases is a "grant of `neither judicial, legislative, or executive power. Hence, its exercise by a prosecutor does not violate the Separation of Powers Doctrine....'" (Bishop v. State (1995) 265 Ga. 821, 822, 462 S.E.2d 716, 717, citations omitted.)
*787 The decisional law upon which defendant relies concerns the Legislature's attempt to give the prosecutor the ability to veto decisions by the trial court concerning sentencing or the dismissal of charges after charges have been filed and the trial court's jurisdiction invoked. (See, e.g., People v. Tenorio, supra, 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993 [statutory provision giving prosecutor the power to preclude the court from exercising its discretion to strike a prior conviction for purposes of sentencing violated separation of powers doctrine]; Esteybar v. Municipal Court (1971) 5 Cal.3d 119, 95 Cal. Rptr. 524, 485 P.2d 1140 [statutory scheme granting magistrate the authority to reduce a wobbler[4] to a misdemeanor but conditioning the exercise of this power on the approval of the prosecutor violated separation of powers doctrine]; see also People v. Navarro, supra, 7 Cal.3d 248, 102 Cal.Rptr. 137, 497 P.2d 481 [invalidating statute giving prosecutor the ability to veto a judicial decision to commit a convicted defendant to a drug treatment program in lieu of prison].)
As pointed out by the California Supreme Court in Davis v. Municipal Court, supra, 46 Cal.3d 64, 249 Cal.Rptr. 300, 757 P.2d 11, none of those cases holds that the Legislature cannot delegate to the executive branch the power to make discretionary decisions as part of its charging function before invocation of the jurisdiction of the courts, even if the decisions have a real and substantive effect upon disposition and sentencing. (Id. at pp. 82-84, 249 Cal. Rptr. 300, 757 P.2d 11.)
Davis v. Municipal Court addressed whether a local rule precluding misdemeanor diversion programs for wobblers charged as felonies violated the separation of powers doctrine by authorizing the executive branch to infringe upon the traditional sentencing authority of the judicial branch. (Davis v. Municipal Court, supra, 46 Cal.3d at pp. 69-70, 249 Cal.Rptr. 300, 757 P.2d 11.) The Supreme Court held there was no separation of powers violation even though prosecutorial discretion in charging a felony rather than a misdemeanor affected the ultimate judicial disposition of the matter. (Id. at pp. 82, 86, 249 Cal.Rptr. 300, 757 P.2d 11.) The court reasoned that, although giving the prosecution a veto power over judicial sentencing decisions after criminal charges have been filed violates the separation of powers doctrine (id. at p. 82, 249 Cal.Rptr. 300, 757 P.2d 11), the exercise of the prosecutor's charging function, i.e., the discretion to charge a wobbler as a felony rather than a misdemeanor, "does not usurp judicial power or unconstitutionally infringe the judicial function," even though the charging decision limits the court's sentencing options. (Id. at p. 86, 249 Cal. Rptr. 300, 757 P.2d 11.)
Such is the case with the power granted to the prosecutor by Proposition 21. The fact that a prosecutor's decision to file charges against a minor in criminal court rather than in juvenile court limits the sentencing choices does not unconstitutionally interfere with the judicial function since the prosecutor's discretion is exercised before the court exercises any jurisdiction over the case.
Likewise, the elimination of the juvenile court's statutory role in determining, via fitness hearings, whether certain minors charged with committing certain crimes should be prosecuted in the juvenile court or the criminal court does *788 not unconstitutionally infringe upon a judicial function. As defendant acknowledges, a minor has no constitutional right to be tried in the juvenile court system. Such a right is solely a creature of statute, which the Legislature may eliminate entirely, or restrict, or qualify as long as no arbitrary or discriminatory classification is involved. (In re Jose H. (2000) 77 Cal.App.4th 1090, 1099, 92 Cal.Rptr.2d 228; Hicks v. Superior Court (1995) 36 Cal.App.4th 1649, 1658, 1660, 43 Cal.Rptr.2d 269; Woodard v. Wainwright (5th Cir.1977) 556 F.2d 781, 784; Hansen v. State (Wyo.1995) 904 P.2d 811, 818, and cases cited therein.) Accordingly, it is within the Legislature's power to determine that, as a matter of public policy, a minor is a fit and proper subject for prosecution in criminal court when the minor's age and the seriousness of the alleged crime in the abstract meet specified statutory criteria, thereby eliminating the need for a fitness determination by the court.
There simply is no logical difference between (1) a prosecutor evaluating an alleged crime and its perpetrator and deciding, consistent with statutory authority, whether to prosecute the accused for a felony or misdemeanor, and (2) a prosecutor evaluating an alleged crime and its perpetrator and deciding, consistent with statutory authority, whether to prosecute the accused in criminal court or juvenile court. The fact that the choice results in different sentencing alternatives does not detract from the plain fact that it is a charging decision made before a court has acquired jurisdiction over the case.
Consequently, the charging discretion provided to the prosecutor by Proposition 21 does not violate the separation of powers doctrine.[5]

IV
Defendant also contends that section 707(d) violates principles of equal protection because similarly situated minors who commit the same offenses are treated differently, with some being prosecuted in criminal court and others in juvenile court, depending solely upon the prosecutor's exercise of discretion. Defendant notes that the prosecutor's discretion is not dependent upon any statutory criteria, unlike when the juvenile court determines whether to transfer a minor to criminal court. (§ 707, subd. (a), (c).) Therefore, according to defendant, similarly situated minors can receive disparate treatment because minors prosecuted in the juvenile system receive rights, benefits, and sentencing options not available in the criminal system. He also asserts that Proposition 21's direct filing provision does not bear a rational *789 relationship to any legitimate state purpose. We are not persuaded.
Section 707(d) does not result in disparate treatment of similarly situated minors. All minors who meet the statutory criteria of section 707(d) are subject to the prosecutor's charging discretion. The fact that a prosecutor may charge some minors in criminal court and others in juvenile court does not violate the equal protection clause, which "has never been thought to abrogate a prosecutor's authority to exercise leniency in the charging process." (Davis v. Municipal Court, supra, 46 Cal.3d at p. 87, 249 Cal.Rptr. 300, 757 P.2d 11.) Disparity in charging criteria by a prosecutor does not violate equal protection of law absent proof of intentionally disparate treatment based on invidiously discriminatory factors such as race. (People v. Kirkpatrick (1994) 7 Cal.4th 988, 1024, 30 Cal.Rptr.2d 818, 874 P.2d 248; People v. Cortez (1992) 6 Cal.App.4th 1202, 1214, 8 Cal.Rptr.2d 580.)
"Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (Baluyut v. Superior Court (1996) 12 Cal.4th 826, 832, 50 Cal.Rptr.2d 101, 911 P.2d 1.) Hence, the fact that a "prosecutor may be influenced by the penalties available upon conviction, ... standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause." (United States v. Batchelder (1979) 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755, 765.)
And section 707(d) passes constitutional muster under the rational relationship test. In enacting Proposition 21, the People recognized that juvenile court resources were being expended on minors who commit serious and violent crimes, not simply acts of delinquency. As defendant concedes, the People constitutionally could mandate that all of such offenses be prosecuted in criminal court in order to serve the interests of deterring crime and protecting the public safety. In providing for some leniency by deeming all minors who commit serious crimes at certain ages to be fit and proper subjects for criminal court prosecution, but giving discretion to the prosecutor to bring the charges in juvenile court where appropriate in the prosecutor's view, Proposition 21 serves a rational state interest. It promotes the goals of deterring crime, protecting society, and imposing appropriate sanctions on juvenile offenders who commit serious crimes.
As we have noted, the charging determination, which properly can take into account the available sanctions, is a decision that traditionally has been left to the prosecutor's discretion. Thus, defendant's equal protection challenge is unavailing. (Cf. Hansen v. State, supra, 904 P.2d at pp. 817-820 [statute giving prosecutor discretion to file charges in either juvenile or criminal court does not violate equal protection]; People v. Thorpe (Colo.1982) 641 P.2d 935, 939-940; but see State v. Mohi (Utah 1995) 901 P.2d 991, 1004 [statute giving prosecutor discretion to file charges in either juvenile or criminal court violates Utah Constitution's uniform operation of laws provision].)

V
In another attack on the initiative, defendant claims that section 707(d) violates principles of due process in two ways: (1) it eliminates the prosecutor's duty to make a prima facie case that the minor has actually committed the relevant offenses before charges are brought against the minor in criminal court; and (2) in defendant's words, "it does not afford a minor a *790 judicial fitness hearing and determination before he loses juvenile court jurisdiction."
Defendant acknowledges that section 707(d)(4) requires the prosecutor to prove at the preliminary hearing that reasonable cause exists to believe the minor committed one of the crimes for which charges may be filed directly in criminal court.[6] However, he argues this is not sufficient, citing Edsel P. v. Superior Court (1985) 165 Cal.App.3d 763, 211 Cal.Rptr. 869.
Edsel P. v. Superior Court, supra, 165 Cal.App.3d 763, 211 Cal.Rptr. 869 held that, when a minor is charged with committing a crime for which the minor would be presumed unfit to be dealt with under the juvenile court law, section 637 entitles the minor, upon request, to require the prosecution to establish a "prima facie case" that the minor committed the charged offense which gives rise to the presumption of unfitness.[7] (Id. at pp. 780, 784, 211 Cal.Rptr. 869.) In applying the statutory requirement "that evidence of the prima facie case be presented when the minor challenges the sufficiency of the evidence to constitute probable cause," the court stated: "It is no answer that the prosecution will eventually have to show probable cause in the adult court, for by that time the minor will already have been deprived of the right to be tried under the Juvenile Court Law." (Id. at pp. 784-785, 211 Cal.Rptr. 869.)
Edsel P. v. Superior Court, supra, is of no assistance to defendant because it involved a different statutory scheme, wherein the prosecutor was required to bring charges against a minor in juvenile court initially, rather than directly filing charges in criminal court. Unlike the statutory scheme in effect in Edsel P. v. Superior Court, a defendant within the purview of section 707(d) has no right to a fitness hearing and no right to be tried under the juvenile court law.
Nor does defendant benefit from his reliance on Kent v. United States (1966) 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, which held that the critical question of whether a minor should be treated as if he were an adult should not be answered without (1) a hearing prior to entry of a jurisdictional waiver order, (2) access by his counsel to the minor's probation report, and (3) a statement of reasons for the juvenile court's decisions. (Id. at pp. 557, 561, 86 S.Ct. at pp. 1055, 1056, 16 L.Ed.2d at pp. 95, 97.) However, that case dealt with a statutory scheme which vested original and exclusive jurisdiction over a child in the juvenile court and required a waiver of jurisdiction by the juvenile court before criminal proceedings could be brought by the United States Attorney. (Id. at p. 561, 86 S.Ct. at p. 1056, 16 L.Ed.2d at p. 97.)
Viewed in context, Kent v. United States simply requires that, where proceedings against a minor must be initiated in a juvenile court, certain procedural due process *791 must be accorded in the judicial proceedings before the matter may be transferred to a criminal court. Nothing in the court's opinion mandates that this same procedural due process must be followed before a minor may be charged in criminal court when the statutory scheme permits a prosecutor to file an action directly in criminal court. (Cf. People v. Thorpe, supra, 641 P.2d at p. 939; State v. Cain (Fla.1980) 381 So.2d 1361, 1365.)
Accordingly, the cases upon which defendant relies merely stand for the proposition that minors have a due process right to certain juvenile court procedures where judicial proceedings are instituted, or must be instituted, in the juvenile court, thereby vesting the juvenile court with jurisdiction over the matter. The cases do not hold that minors have a constitutional right to juvenile court treatment, including a fitness hearing or a showing of a prima facie case in the juvenile court, where the pertinent statutory scheme does not require the prosecutor to charge the minor in juvenile court and, instead, gives the prosecutor authority to file the action directly in criminal court.
Here, the People have determined that a minor of a specified age who is alleged to have committed a specified crime may be prosecuted in criminal court without a prior fitness hearing. In other words, unless the prosecution exercises its discretion to invoke juvenile court jurisdiction by filing charges in that court, the minor is not entitled to the protections afforded by the juvenile court system. As we stated earlier, a minor has no constitutional right to be tried in the juvenile court; such right is solely statutory and may be restricted, qualified, or eliminated by the legislative branch as long as no arbitrary or discriminatory classification is involved.
In enacting Proposition 21, the People had a rational and nondiscriminatory reason for permitting the prosecutor to file criminal charges directly in the criminal court against minors of certain ages who are accused of committing certain crimes. The People recognized that serious, violent, and gang-related crimes committed by such minors are not acts of delinquency, for which attempts at rehabilitation within the juvenile court system is appropriate but are, instead, the equivalent of hardened adult crimes. The People were entitled to conclude that the parens patriae function of the juvenile system would not work for these minors and, therefore, to demand greater protection from such offenders than is provided by that system. Thus, the People gave prosecutors discretionary power to prosecute in criminal court those minors who at specified ages are alleged to have committed specified serious crimes and whose backgrounds indicate the least chance of rehabilitation. The prosecutor retains the discretion to charge other minors, as to whom juvenile court treatment is more appropriate, under that system.
Because (1) there is no statutory, inherent, or constitutional right to have a prima facie case established in the juvenile court or to have a fitness hearing before proceedings are instituted in the criminal court, and (2) section 707(d) bears a rational relationship to a proper legislative goal, section 707(d) does not violate due process. (Cf. United States v. Bland (D.C.Cir.1972) 472 F.2d 1329, 1334-1337 [Congress can legitimately vest in the Attorney General discretion to decide whether to proceed against a juvenile as an adult and the exercise of such discretion does not require a due process hearing]; accord United States v. Quinones (1st Cir.1975) 516 F.2d 1309, 1311.)
Defendant disagrees that the lack of a constitutional right to treatment as a juvenile undermines his position. In his view, *792 the right to the procedural due process afforded by the juvenile court system does not stop because treatment by the juvenile court may be a privilege rather than an inherent right. Thus, defendant apparently believes that once the Legislature has given minors the right to certain treatment within the juvenile court system, this right cannot be taken away without certain due process safeguards. He cites Goldberg v. Kelly (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 in support of this proposition.
In Goldberg v. Kelly, supra, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, New York City officials administering a welfare program were terminating recipients' benefits without a pre-termination hearing. (Id. at pp. 255-257, 90 S.Ct. at pp. 1013-1014, 25 L.Ed.2d at pp. 292-293.) Although public assistance benefits are a privilege and not a constitutional right, the court held that welfare recipients had an "important right" to receive welfare benefits, which right could not be terminated by city authorities without a pre-termination due process hearing in light of the "crucial factor" of the recipients'"desperate" need for those benefits, which are necessary for daily subsistence. (Id. at pp. 261-264, 90 S.Ct. at pp. 1016-1018, 25 L.Ed.2d at pp. 295-297.)
Defendant's reliance on Goldberg v. Kelly is misplaced because his situation is not analogous to that of welfare recipients. At the time Proposition 21 was enacted, he had not committed the offenses in question. Hence, he was not already receiving the benefits of the juvenile court system when Proposition 21 eliminated or altered them. In other words, defendant did not have an existing "important right" to juvenile court treatment.
This undermines a necessary factual predicate to defendant's contention, i.e., that he had been given an important right to juvenile court treatment by the former section 707, which right was then taken away from him without any procedural due process as the result of the amended section 707(d). Under the statutory scheme existing prior to Proposition 21, defendant, and similarly situated minors, were not given the absolute right to juvenile treatment in any realistic sense.
Defendant's situation is akin to a person applying for welfare benefits based on prior statutory eligibility criteria and procedures after these criteria and procedures have been modified, via legitimate means, such that the person no longer is qualified or eligible to receive benefits. Goldberg v. Kelly does not hold that, under these circumstances, a person cannot be denied welfare benefits without first conducting an eligibility hearing using the old criteria and procedures, or at least conducting some form of eligibility hearing.
Furthermore, although juvenile treatment may be an important right for those who qualify for it, minors in defendant's position do not have a "desperate" need to be prosecuted in juvenile court rather than in criminal court, given that the criminal court system "is well appointed in the accoutrements of due process." (Woodard v. Wainwright, supra, 556 F.2d at pp. 785-786.)
For all the foregoing reasons, defendant's due process challenge to section 707(d) fails.

VI-VII[**]

DISPOSITION
The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting that defendant's conviction on count II was for second *793 degree robbery, and to send a certified copy of the amended abstract to the Department of Corrections.
We concur: NICHOLSON, J., and RAYE, J.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Parts VI and VII.
[1] Although, for reasons that follow, we reject defendant's claim that Proposition 21 violates the single-subject rule, we agree with the following astute observation of his appellate counsel: Due to the length and complexity of the initiative, reading it from start to finish is an "arduous" task that "requires a reader's fortitude."
[2] This issue is currently pending before the California Supreme Court in Manduley v. Superior Court (2001) 86 Cal.App.4th 1198, 104 Cal.Rptr.2d 140 (review granted April 25, 2001, S095992) and Bravo v. Superior Court (2001) 90 Cal.App.4th 88, 108 Cal.Rptr.2d 514 (review granted September 12, 2001, S099376).
[3] Voter-enacted initiatives are considered a power exercised by the legislative branch; thus, we will refer as appropriate to the Legislature or the People when discussing the legislative branch. (Bagley v. City of Manhattan Beach (1976) 18 Cal.3d 22, 26, 132 Cal.Rptr. 668, 553 P.2d 1140.)
[4] A "wobbler" is an offense that may be charged and punished as either a felony or a misdemeanor. (Davis v. Municipal Court, supra, 46 Cal.3d at p. 70, 249 Cal.Rptr. 300, 757 P.2d 11; Pen.Code, § 17, subd. (b).)
[5] This case does not present, and we do not address, the question whether the separation of powers doctrine is violated by Penal Code section 1170.19, subdivision (a), which provides in pertinent part: "Notwithstanding any other provision of law, the following shall apply to a person sentenced pursuant to Section 1170.17 [sentencing for a person who commits a crime while under the age of 18 and is prosecuted in criminal court without a prior finding that the person is not a fit and proper subject to be dealt with in juvenile court]. [¶] ... [¶] (4) Subject to the knowing and intelligent consent of both the prosecution and the person being sentenced pursuant to this section, the court may order a juvenile disposition under the juvenile court law, in lieu of a sentence under this code, upon a finding that such an order would serve the best interests of justice, protection of the community, and the person being sentenced. Prior to ordering a juvenile disposition, the court shall cause to be received into evidence a social study by the probation officer, prepared pursuant to Section 706 of the Welfare and Institutions Code, and shall state that the social study made by the probation officer has been read and considered by the court." (Italics added.)
[6] Section 707(d)(4) provides in pertinent part: "In any case in which the district attorney or other appropriate prosecuting officer has filed an accusatory pleading against a minor in a court of criminal jurisdiction pursuant to the provisions of this subdivision, the case shall then proceed according to the laws applicable to a criminal case. In conjunction with the preliminary hearing as provided for in Section 738 of the Penal Code, the magistrate shall make a finding that reasonable cause exists to believe that the minor comes within the provisions of this subdivision. If reasonable cause is not established, the criminal court shall transfer the case to the juvenile court having jurisdiction over the matter."
[7] Section 637 provides that, when a minor has been detained, a request may be made for a rehearing within three judicial days "to consider evidence of the prima facie case. If the prima facie case is not established, the minor shall be released form detention."
[**] See footnote *, ante.