Filed 6/19/19

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>   Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>   Respondent;<br><br>K. L.,<br><br>   Real Party in Interest. | C088735<br><br>(Super. Ct. No. JV136177) |
| THE PEOPLE,<br><br>   Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>   Respondent;<br><br>R. Z.,<br><br>   Real Party in Interest. | C088736<br><br>(Super. Ct. No. JV138822) |

1

ORIGINAL PROCEEDING in mandate.  Petition denied.  Alyson Lewis, Judge.

Anne Marie Schubert, District Attorney, Morgan Gire, Supervising Deputy District Attorney, Alissa Kubochi, Deputy District Attorney, for Petitioner.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Tamar Pachter, Supervising Deputy Attorney General, Nelson R. Richards, Deputy Attorney General, for the People of the State of California as an interested party.

No appearance for Respondent

Paul R. Irish, under appointment by the trial court, for Real Party in Interest K. L.

Steven M. Garrett, Public Defender, Mark K. Slaughter, Supervising Assistant Public Defender and Noel Calvillo, Assistant Public Defender, for Real Party in Interest R. Z.

This case presents a narrow question for determination:  is Senate Bill No. 1391 (Stats. 2018, ch. 1012, § 1) (S.B. 1391) void as an unconstitutional amendment to Welfare and Institutions Code[1] section 707 as modified by the Public Safety and Rehabilitation Act of 2016 (Proposition 57)?  Petitioner, the People of the State of California,[2] filed two petitions for writ of mandate with this court seeking relief from separate orders by respondent Superior Court of Sacramento County refusing to transfer real parties in interest R. Z. and K. L. from juvenile to criminal court for purposes of criminal prosecution based on section 707 as modified by legislative enactment of S.B.

---

[1]   Undesignated statutory references are to the Welfare and Institutions Code.

[2]   While the petitions for writ of mandate before this court are titled with the People of the State of California as petitioner, the cases were filed by the Sacramento County District Attorney, who is representing the People of the State of California in the underlying juvenile cases.  As required by California Rule of Court, rule 8.29(c), petitioner also served the Attorney General with the petition.  The Attorney General, on behalf of the People of the State of California, as an interested party, has taken the position with this court that S.B. 1391 is not an unconstitutional amendment.

1391. Specifically, petitioner argues S.B. 1391's bar on the transfer of minors under the age of 16 for criminal prosecution as adults is unconstitutional because it does not further the intent and purpose of Proposition 57. We disagree and will deny the petitions.

BACKGROUND

The underlying conduct that brings the minor real parties in interest within the jurisdiction of either the juvenile court or the criminal court is not relevant to resolution of the narrow legal issue before us. Accordingly, we limit our factual and procedural recitation to those matters pertinent to our inquiry.

In early 2016, petitioner charged minor K. L., who was 15 years old at the time of the alleged conduct, by felony criminal complaint of murder, attempted murder, and shooting into an occupied vehicle, with additional allegations that K. L. personally discharged a firearm causing death and great bodily injury and that he committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang. In 2017, following the passage of Proposition 57 by the electorate, the trial court suspended criminal proceedings and certified K. L. to juvenile court for a transfer hearing. Thereafter, in October 2018, the trial court found K. L. unfit for juvenile court and granted petitioner's motion to transfer K. L. to criminal court. However, the trial court stayed that transfer order until January 2019 to determine the applicability and constitutionality of a new legislative enactment -- S.B. 1391. Over petitioner's opposition, on January 10, 2019, the trial court dismissed the motion to transfer K. L. to criminal court, vacated its prior order transferring the minor, and sent the matter to juvenile court.

In late 2017, minor R. Z., who was 15 years old at the time of the alleged conduct, was arraigned on a juvenile petition alleging that he came within the jurisdiction of the juvenile court because he committed murder and personally discharged a firearm causing great bodily injury or death in the commission of the homicide. In December 2018, the

3

trial court found R. Z. unfit for juvenile court and granted petitioner's motion transferring R. Z. to criminal court. However, the trial court stayed execution of that order until January 2019 so that it could determine the effect of S.B. 1391 on its order transferring the minor. Over petitioner's opposition, on January 10, 2019, the trial court dismissed the motion to transfer R. Z. to criminal court, vacated its prior order transferring the minor, and sent the matter to juvenile court.

On January 28, 2019, petitioner filed petitions for writ of mandate with this court challenging the trial court's orders directing the proceedings relative to the conduct of K. L. and R. Z. to be conducted in juvenile court. On January 31, 2019, to prevent the attachment of jeopardy prior to resolution of the issue raised by the petitions for writ of mandate (see *Gonzalez v. Municipal Court* (1973) 32 Cal.App.3d 706, 713-714), we stayed the juvenile court proceedings pending our decision on the petitions for writ of mandate. To resolve an issue of statewide importance, we thereafter issued orders to show cause in both matters.

## DISCUSSION

Petitioner challenges the constitutionality of S.B. 1391 on the basis that barring criminal prosecution of 14- or 15-year-old minors does not further the purpose and intent of Proposition 57.[3] Specifically, petitioner argues that it was the intent of Proposition 57

---

[3] To the extent petitioner also asserts that S.B. 1391 is unconstitutional because it contravenes the intent of Proposition 21 passed by the electorate in the year 2000, that argument lacks merit. Upon the passage of Proposition 57, the only provisions in section 707 relating to adult prosecution of minors under the age of 16 were those added by that voter enactment. All remnants of Proposition 21 were deleted by passage of Proposition 57. (Compare Official Voter Information Guide, Gen. Elec. (2016) text of Prop. 57, § 4.2, pp. 144-145 [striking in their entirety subdivisions (c) and (d) of § 707] (2016 Voter Guide) with Official Voter Information Guide, Primary Elec. (2000) text of Prop. 21, § 26, pp. 127-129 [amending subdivision (c) and adding subdivision (d) of § 707 thereby permitting direct adult prosecution of 14- and 15-year-old minors]; see also *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 710-711 [construing Proposition 57 as

4

to specifically authorize criminal prosecution of 14- and 15-year-old minors charged with serious offenses, but to vest the decision whether to transfer the minors to criminal court with a judge instead of a prosecutor. We are not persuaded.

## I

### *Dictates Of Our Statutory Review*

As petitioner's argument asserts that S.B. 1391 is an improper amendment of a voter-approved initiative, we must first clarify when an initiative may be amended by legislative enactment. "The Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const. Art. II, § 10, subd. (c).) Proposition 57 authorizes legislative amendment of its provisions that amended section 707, "so long as such amendments are consistent with and further the intent of this act by a statute that is passed by a majority vote of the members of each house of the Legislature and signed by the Governor." (2016 Voter Guide, § 5, p. 145.) The limited question before us is whether S.B. 1391 is "consistent with and further[s] the intent of" Proposition 57.

In this context, "[w]e 'start[] with the presumption that the Legislature acted within its authority' and uphold the validity of the legislative amendment 'if, by any reasonable construction, it can be said that the statute furthers the purposes' of the initiative." (*People v. DeLeon* (2017) 3 Cal.5th 640, 651; see also *Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366, 1374; *Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1354, 1365 ["We presume the constitutionality of a legislative act, resolving all doubts in favor of the act, and must uphold the act unless a conflict with a provision of the state or federal Constitution is

---

a rejection of Proposition 21].) Accordingly, we limit our discussion to whether S.B. 1391 is a proper amendment of Proposition 57.

5

clear and unquestionable"].) "In identifying the purposes of an initiative, we examine the initiative as a whole, and are guided by, but not limited to, its general statements of purpose. [Citation.] We must give effect to an initiative's specific language, as well as its major and fundamental purposes." (*Gardner*, at p. 1374.) The limitations on legislative amendment are "strictly construed and may not be given effect as against the general power of the legislature, ' " '*unless such limitations clearly inhibit the act in question.*' " ' " (*Foundation*, at p. 1365; see also *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1255-1256.) And, as is true of all statutory interpretation, we begin first with the language of the statute, giving its words ordinary meaning, and construing it within the context of the statute and overall statutory scheme as a whole. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.) If the language is ambiguous, we refer to other " ' "indicia" ' " of voter intent, such as the Official Voter Information Guide. (*Ibid.*) We may also be guided by the general description of the initiative's purpose offered by its proponents.[4] (*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1490-1491.)

---

[4] Petitioner has argued that Proposition 57 was a compromise measure, and that when initially introduced it would have "[e]stablish[ed] 16 as the minimum age at which juveniles may be transferred to adult court." (See *Brown v. Superior Court* (2016) 63 Cal.4th 335, 340.) Because that version of the proposition was not voted on by the voters or included in the official materials provided to the voters, it does not provide us any indication of the voters' intent in approving Proposition 57. (See *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 802 [declining to consider material that was not presented to the voters as evidence of the voters' intent]; see also *Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 866 ["ballot pamphlets may constitute the only legislative history of an initiative measure adopted by the voters"].) Nevertheless, we note that this fact does not support petitioner's argument that S.B. 1391 is contrary to the intent and purpose of Proposition 57. That it was the proponents' intent, at least at one time, to eliminate criminal prosecution of 14 and 15 year olds in Proposition 57 and that they might have been persuaded to remove that language from the initiative (see *Brown*, at p. 341 [during the requisite comment period proponents of Proposition 57 spoke with several interest groups, including the California District Attorneys Association]),

6

## II

### *A Brief Statutory History*

For more than a century, California courts have recognized that proceedings for juveniles charged with crimes are different than for adults accused of crimes. (See *Ex Parte Ah Peen* (1876) 51 Cal. 280, 281 [explaining the purposes of a proceeding against a 16 year old is "not punishment for offenses done, but reformation and training . . . with a view to his future usefulness when he shall have been reclaimed to society, or shall have attained his majority"].) This distinction was incorporated in California's first statutory approach to juvenile law. (See Stats. 1903, ch. 43, §§ 1, 7-8, pp. 44, 46-47 [authorizing placement of child alleged to be delinquent in own home under supervision of probation officer, in state reform school, with some association, society, or corporation, or in a family home, who will care for the child].) It was further encapsulated in the 1961 statutory overhaul to juvenile law, which initiated the now-familiar best interest of the child standard, with a goal of promoting "care and guidance . . . as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State." (Stats. 1961, ch. 1616, § 502, p. 3460.) With this legislative intent in mind, we turn to a review of the procedural requirements for criminal prosecution of minors.

" 'Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law. Since 1975 the procedural requirements for fitness hearings have been established by section 707.' [Citation.] The general rule used to be that 'any individual less than 18 years of age who violates the criminal law comes within the jurisdiction of the juvenile court, which may adjudge such an individual a ward of the court.' " (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 305.) Indeed, for

---

suggests that S.B. 1391 furthers that intent to have more juveniles fall within juvenile jurisdiction.

decades only those minors who were at least 16 years of age at the time of the offense could be transferred to criminal court.  (See *Hicks v. Superior Court* (1995) 36 Cal.App.4th 1649, 1654-1655; see also Stats. 1961, ch. 1616, §§ 500, 510, 707, pp. 3459, 3462, 3485 [as enacted in 1961, the " 'Juvenile Court Law' " set 16 as a minimum age for transfer to criminal court for prosecution or to state prison for incarceration].)  However, in 1994, the Legislature expanded that group to include minors aged 14 or 15 at the time of the offense, for certain charged crimes and with certain limiting circumstances.  (Stats. 1994, ch. 453 (AB 560), § 9.5; *Hicks*, at pp. 1655-1656.)  At that time, any transfer of a minor was still subject to a judicial determination of unfitness.  (*Hicks*, at pp. 1656-1657; see also *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548-549.)

Then, in 2000, the voters enacted Proposition 21, "the Gang Violence and Juvenile Crime Prevention Act."  (*Manduley v. Superior Court*, *supra*, 27 Cal.4th at pp. 544-545.)  At that time, "certain minors who were 16 years of age or older at the time they committed specified crimes were required to be prosecuted in a court of criminal jurisdiction--without any requirement of a determination by the juvenile court that the minor was unfit for treatment under the juvenile court law."  (*Id.* at p. 549; see also *Juan G. v. Superior Court* (2012) 209 Cal.App.4th 1480, 1488-1489.)  Among other things, Proposition 21 extended direct filing in criminal court by the prosecution to those minors aged 14 or 15 years old, who were charged with certain offenses in certain circumstances.  (*Manduley*, at pp. 549-550.)

"California voters approved Proposition 57, dubbed the Public Safety and Rehabilitation Act of 2016, at the November 2016 general election."  (*In re Edwards* (2018) 26 Cal.App.5th 1181, 1185.)  With respect to juveniles, "Proposition 57 changed the procedure again, and largely returned California to the historical rule. 'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors.  Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various

8

factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.' " (*People v. Superior Court* (*Lara*), *supra*, 4 Cal.5th at p. 305.)  Indeed, under Proposition 57, youths aged 16 or older who had committed felonies were eligible for transfer, following a judicial determination of fitness for juvenile adjudication, while youths aged 14 or 15 were eligible following a judicial determination only if they had committed certain enumerated serious crimes. (2016 Voter Guide, § 4.2, p. 142.)  Courts have noted that the enactment of Proposition 57 reflects a "sea change in penology regarding the relative culpability and rehabilitation possibilities for juvenile offenders" over the 16 years since Proposition 21 was enacted, as reflected in several judicial opinions.  (*People v. Vela* (2017) 11 Cal.App.5th 68, 75, citing *Graham v. Florida* (2010) 560 U.S. 48, 67 [176 L.Ed.2d 825, 840] [a juvenile may not be sentenced to life without the possibility of parole for a nonhomicide offense ] & *Miller v. Alabama* (2012) 567 U.S. 460, 469-472 [183 L.Ed.2d 407, 417-419] [a juvenile may not be sentenced to life without the possibility of parole, even for a homicide, without consideration of youth-related factors in sentencing].)

Then, in 2018, the Legislature enacted S.B. 1391, which further amended section 707 by removing the authority of the prosecutor to seek transfer of a minor who was 14 or 15 years old at the time of committing the offense, unless the minor was not apprehended prior to the end of juvenile court jurisdiction.

III

*The Purpose And Intent Of Proposition 57*

The uncodified text of Section 2 of Proposition 57, sets forth as its purpose and intent the following:  "1.  Protect and enhance public safety.  [¶]  2.  Save money by reducing wasteful spending on prisons.  [¶]  3.  Prevent federal courts from indiscriminately releasing prisoners.  [¶]  4.  Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.  [¶]  5.  Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."  (2016 Voter

9

Guide, § 2, p. 141.) Petitioner argues S.B. 1391 conflicts with Proposition 57's intent to have a juvenile court judge determine whether a 14 or 15 year old should be tried in adult court. If S.B. 1391 contravenes any stated primary purpose of the initiative, it is invalid. (*Gardner v. Schwarzenegger*, *supra*, 178 Cal.App.4th at p. 1378; *Foundation for Taxpayer & Consumer Rights v. Garamendi*, *supra*, 132 Cal.App.4th at pp. 1370-1371.) Thus, we must ascertain whether, as petitioner urges, it would contravene the intent of Proposition 57 to preclude prosecution of 14 and 15 year olds in adult court.

It is a stated intent of Proposition 57 that "a judge, not a prosecutor, . . . decide whether juveniles should be tried in adult court." As noted above, Proposition 57 amended section 707 to provide that instead of directly filing charges in criminal court, a prosecutor may move for transfer of proceedings to criminal court, and the juvenile court exercises its discretion to determine whether such a transfer is appropriate. (2016 Voter Guide, § 4.2, pp. 142, 144.) S.B. 1391 has not eliminated that procedural scheme but has limited the pool of minors eligible for such a transfer.[5] Under S.B. 1391, for minors aged 16 and older, the prosecutor continues to make a motion for transfer of the charged minor, and the juvenile court determines whether the minor should be transferred for criminal prosecution. (§ 707, subd. (a).) So, at least with respect to minors aged 16 and over, there is no conflict between Proposition 57 and S.B. 1391.

The question then becomes whether it was a specific intent of Proposition 57 to permit prosecution of minors aged 14 or 15 in adult court. There is no dispute that by its language, Proposition 57 does permit transfer of minors aged 14 or 15 if they commit certain crimes. (2016 Voter Guide, § 4.2, p. 142.) That is not, however, determinative of

---

[5] We note that our sister court has come to the same conclusion in *People v. Superior Court* (*Alexander C.*) (2019) 34 Cal.App.5th 994 [noting that though S.B. 1391 "narrows the class of minors who are subject to . . . potential transfer," this has no effect on the stated intent of Proposition 57 that a judge rather than a prosecutor decide whether the minor is suitable for juvenile court].)

10

whether it was one of the "major and fundamental purposes" of Proposition 57 (*Gardner v. Schwarzenegger*, *supra*, 178 Cal.App.4th at p. 1374) or that eliminating that possibility is a "clear and unquestionable" conflict with Proposition 57 (*Foundation for Taxpayer & Consumer Rights v. Garamendi*, *supra*, 132 Cal.App.4th at p. 1365).[6]

Proposition 57 does not state as its specific intent that minors aged 14 or 15 be subject to prosecution in criminal court. Rather, the language used in the stated purpose of Proposition 57, which petitioner asserts is contravened by S.B. 1391, is to have a "judge, not a prosecutor, . . . decide whether juveniles should be tried in adult court." (2016 Voter Guide, § 2, p. 141.) This language does not suggest a focus on retaining the ability to charge juveniles in adult court so much as removing the discretion of district attorneys to make that decision. This interpretation of the language, which inherently reduces the number of juveniles tried in adult court, is supported by other explicit statements of intent to "reduc[e] wasteful spending on prisons," "[p]revent federal courts from indiscriminately releasing prisoners," and to "emphasiz[e] rehabilitation, especially for juveniles." (2016 Voter Guide, § 2, p. 141.) That said, as the plain language of Proposition 57 is not decisive on the issue, we turn to other indicia to discern the voters' intent on this subject.

With respect to juveniles, the official title and summary for Proposition 57, prepared by the Attorney General and included in the ballot materials provided to the voters, states: "Provides juvenile court judges shall make determination, upon prosecutor

---

**6** This is not a circumstance in which we are called upon to determine whether a legislative enactment amends an initiative (see *Franchise Tax Bd. v. Cory* (1978) 80 Cal.App.3d 772, 776-777); rather, the question here is merely whether the amendment contravenes the intent and purpose of the initiative. The argument proffered by petitioner that an amendment to the provisions enacted by Proposition 57 is ipso facto a contravention of the intent and purpose of Proposition 57 would render superfluous Proposition 57's own decree that the initiative may be amended so long as the amendment is "consistent with and further[s] [its] intent."

11

motion, whether juveniles age 14 and older should be prosecuted and sentenced as adults for specified offenses." (2016 Voter Guide, p. 54.) The summary prepared by the legislative analyst explains that Proposition 57 "changes state law to require that, before youths can be transferred to adult court, they must have a hearing in juvenile court to determine whether they should be transferred. As a result, the only way a youth could be tried in adult court is if the juvenile court judge in the hearing decides to transfer the youth to adult court. Youths accused of committing certain severe crimes would no longer automatically be tried in adult court and no youth could be tried in adult court based only on the decision of a prosecutor." (2016 Voter Guide, p. 56.) The analysis further expounds that "the measure specifies that prosecutors can only seek transfer hearings for youths accused of (1) committing certain significant crimes . . . when they were age 14 or 15 or (2) committing a felony when they were 16 or 17. As a result of these provisions, there would be fewer youths tried in adult court." (*Ibid*.)

The official argument in favor of Proposition 57 included in the ballot materials notes that Proposition 57 will "focus[] resources on keeping dangerous criminals behind bars, while rehabilitating juvenile and adult inmates and saving tens of millions of tax payer dollars." (2016 Voter Guide, p. 58.) Further, it states: "Overcrowded and unconstitutional conditions led the U.S. Supreme Court to order the state to reduce its prison population. Now, without a common sense, long-term solution, we will continue to waste billions and risk a court-ordered release of dangerous prisoners. This is an unacceptable outcome that puts Californians in danger . . . ." (*Ibid.*) Specifically addressing juveniles, the argument in favor claims that Proposition 57 "[r]equires judges instead of prosecutors to decide whether minors should be prosecuted as adults, emphasizing rehabilitation for minors in the juvenile system." (*Ibid.*) It explains that "[e]vidence shows that the more inmates are rehabilitated, the less likely they are to re-offend. Further evidence shows that minors who remain under juvenile court supervision are less likely to commit new crimes. Prop. 57 focuses on evidence-based rehabilitation

12

and allows a juvenile court judge to decide whether or not a minor should be prosecuted as an adult." (*Ibid.*)

Taken as a whole, and in the context of juvenile offenders, it appears the intent of Proposition 57 was to reduce the number of youths who would be prosecuted as adults. This appears to be an intent that will further other broader purposes of Proposition 57 to reduce the number of offenders incarcerated in state prisons, and to increase the opportunities for rehabilitation, particularly for juvenile offenders. That Proposition 57 enacted a procedural scheme to remove from the prosecutor and vest in the judiciary the discretion to determine whether a youth should be prosecuted as an adult, and that it stated it was its intent to impose such a transfer of discretionary power, is in accord with these other purposes. Additionally, under the scheme formalized by Proposition 57, the judiciary merely acted as a check on the prosecutor's discretionary decision by ruling on the motions for transfer, it did not independently decide which charged youths should be subject to the possibility of transfer. This scheme, and these stated purposes and intent are not contravened by S.B. 1391. Rather, S.B. 1391 furthers the stated purpose and intent of Proposition 57 to have fewer youths removed from the juvenile justice system.

And, while Proposition 57 did continue to permit transfer of 14 and 15 year olds to adult court for prosecution, there is nothing in the language of Proposition 57 or the ballot materials to suggest that it was a specific intent of Proposition 57 to ensure that 14- and 15-year-old juvenile offenders would continue to be subject to adult criminal prosecution. S.B. 1391 does not conflict with Proposition 57 but advances its stated intent and purpose to reduce the number of youths to be tried in adult court, reduce the number of incarcerated persons in state prisons, and emphasize rehabilitation for juveniles. Accordingly, we conclude S.B. 1391 is not an unconstitutional amendment of section 707 as modified by Proposition 57.

13

## DISPOSITION

The petitions for writ of mandate are denied.  To promote the interests of justice, this decision is final forthwith as to this court.  (See Cal. Rules of Court, rule 8.490(b).) Pending finality of this decision, our previously issued stay orders dated January 31, 2019, remain in effect.  Upon finality, those orders are vacated.


/s/\
Robie, Acting P.J.


We concur:


/s/\
Butz, J.


/s/\
Renner, J.

14