Poochigian, Acting P. J., dissenting.
One purpose of the Public Safety and Rehabilitation Act of 2016 (Proposition 57) is to require that judges determine whether juveniles should be transferred to criminal court. In contrast, Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1) effectively prohibits judges from determining whether certain juveniles should be transferred to criminal court. Whatever the wisdom of each enactment, it cannot be said that Senate Bill 1391 "further[s] the intent" (Prop. 57, § 5) of Proposition 57. As a result, Senate Bill 1391 is unconstitutional. (See Cal. Const., art II, § 10 (c).) I respectfully dissent from the majority's contrary conclusion.
T.D. argues Senate Bill 1391 is consistent with both the enumerated and reasonably inferable purposes of Proposition 57. The text of each enactment indicates otherwise.
*379 A. Enumerated Purposes of Proposition 57
In section 2, Proposition 57 provides:
"In enacting this act, it is the purpose and intent of the people of the State of California to:
"1. Protect and enhance public safety.
"2. Save money by reducing wasteful spending on prisons.
"3. Prevent federal courts from indiscriminately releasing prisoners.
"4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.
"5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."
The enumerated intent to "require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court," has two clear components. First, the phrasing "Require a judge ... to decide whether juveniles should be tried in adult court" means exactly what it says. The intent of Proposition 57 is to "require" a particular person (i.e., a judge) to make a particular decision (i.e., whether a juvenile should be tried as an adult). Second, the phrase, "not a prosecutor" embodies an intent to deny prosecutors the power to ultimately decide whether juveniles should be tried in adult court.
Senate Bill 1391 clearly conflicts this enumerated intent. Under Senate Bill 1391, neither a prosecutor nor a judge , may decide whether 14-and 15-year-old juveniles *675 may be tried in adult court. Instead, the Legislature has made the decision for 14-and 15-year-old juveniles.[1] This is plainly in conflict with Proposition 57's stated purpose of requiring a judge to decide whether juveniles should be tried in adult court. (Prop. 57, § 2.)
Other courts of appeal have concluded otherwise by interpreting item No. 5 to evince only an intent to remove power from the prosecutor, while minimizing the intent to require the power be exercised by a judge. (See, e.g., People v. Superior Court (K.L. ) (2019) 36 Cal.App.5th 529, 539, 248 Cal.Rptr.3d 555 ["This language does not suggest a focus on retaining the ability to charge juveniles in adult court so much as removing the discretion *380 of district attorneys to make that decision."]; see also maj. opn., ante , at pp. 669-71.) Nothing in section 2 or the substantive provisions of Proposition 57 support such a reading.
Because the fifth enumerated intent of Proposition 57 is so clearly in conflict with Senate Bill 1391, we need not delve into the abstract, policy-laden questions of whether Senate Bill 1391 also conflicts with Proposition 57's other goals of enhancing public safety and saving money. (See Prop. 57, § 2.)
B. Reasonably Inferable Purposes of Proposition 57
However, our analysis does not end with the general, express statements of intent in Proposition 57. (See Amwest Surety Ins. Co. v. Wilson (1995) 11 Cal.4th 1243, 1256-1257, 48 Cal.Rptr.2d 12, 906 P.2d 1112.) We must examine the enactment as a whole to derive its purposes. (See id. at p. 1257, 48 Cal.Rptr.2d 12, 906 P.2d 1112.)
In that vein, T.D. argues the goal of Proposition 57 was to have fewer youths tried in adult court. And since Senate Bill 1391 "further reduc[es] the number of juvenile[s] subject to prosecution as adults," it necessarily furthers the intent of Proposition 57. This overly-simplistic approach ignores the fact that Proposition 57's purposes are multi-faceted.
Proposition 57 may have intended to reduce the number of youths to be prosecuted as adults ... but only up to a point. Proposition 57, like any enactment, was written to "go so far and no further." ( Michigan v. Bay Mills Indian Cmty. (2014) 572 U.S. 782, 794, 134 S.Ct. 2024, 188 L.Ed.2d 1071.) "[S]tatutes have stopping points as well as general objectives, and how far to go in pursuit of those objectives is integral to the legislative choice. [Citation.]" ( NLRB v. HH3 Trucking, Inc. (7th Cir. 2014) 755 F.3d 468, 471.) "[L]imitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations. [Citation.]" ( Rapanos v. United States (2006) 547 U.S. 715, 752, 126 S.Ct. 2208, 165 L.Ed.2d 159.)
Proposition 57 sought to find the balancing point of several disparate objectives, including enhancing public safety, saving money, and emphasizing rehabilitation. The balance it struck is the result of both the considerations of "leniency" emphasized by T.D. and various considerations pushing in the other direction. T.D. would have us cherry-pick a single goal and conclude any enactment advancing that singular goal of leniency towards juveniles must further the multi-faceted purposes of Proposition 57, regardless of how contrary that enactment may be to Proposition 57's other purposes.
Surely, one purpose of Proposition 57 is to emphasize rehabilitation for juveniles. (Prop. 57, § 2.) But another purpose is to require that judges *381 determine whether juveniles *676 - including 14 and 15 year olds - should be tried as adults. (Ibid. ) While T.D. would have us elevate the former purpose above the latter, there is "nothing in Proposition 57 to suggest voters intended the Act to extend as broadly as possible for one purpose but not for another." (Maj. opn., ante , at p. 668.)
Similarly, the Attorney General notes Senate Bill 1391 "moves the law in the same direction as Proposition 57." But the "direction" in which an enactment moves the law is only one indicator of purpose. How far the enactment moves the law in that direction is another indicator of intent and is "no less" a part of its "purpose."[2] ( Rapanos v. United States , supra , 547 U.S. at p. 752, 126 S.Ct. 2208.) "[S]tatutes have stopping points as well as general objectives, and how far to go in pursuit of those objectives is integral to the legislative choice. [Citation.]" ( NLRB v. HH3 Trucking, Inc. , supra , 755 F.3d at p. 471.) That is especially true when the "stopping point" at issue - reducing the number of juveniles tried as adults but still ultimately requiring judges to determine whether juveniles will be tried as adults - is an express purpose of the initiative.
In a related contention, some have observed that "the practice of allowing certain 14 and 15 year olds to be prosecuted in criminal court is not an 'actual change[ ]' wrought by Proposition 57, but a continuation of a prior practice." ( People v. Superior Court (Alexander C. ) (2019) 34 Cal.App.5th 994, 1002, 246 Cal.Rptr.3d 712 ; see also maj. opn., ante , at pp. 671-72.) But the question is not whether Proposition 57 was the first law to permit prosecution of 14-and 15-year-olds as adults. Rather, the question is whether the continuation of that prior practice embodies an intent of Proposition 57. If so, then Senate Bill 1391's dis -continuation of that same practice cannot be said to further the intent of Proposition 57.
And there can be no doubt that Proposition 57 did intend to preserve the prior practice of permitting some 14 and 15 year olds to be tried as adults. Proposition 57 made affirmative statutory tweaks to ensure that, notwithstanding the closely related changes it made to juvenile law, 14 and 15 year olds could still be transferred to criminal court and prosecuted as adults. (Prop. 57, § 4.2 [altering statutory language to read "when he or she was 14 or 15 years of age" in subdivisions (a) and (b) of section 707].) Thus, Proposition 57 was not oblivious to its effect of preserving the prior *382 practice, but rather went out of its way to ensure those juveniles could still be prosecuted as adults in some circumstances. Senate Bill 1391 is in direct conflict with that intent.
Because Senate Bill 1391 clearly does not "further" (Prop. 57, § 2) the enumerated and inferable intents of Proposition 57, it is unconstitutional under article II, section 10(c) of the California Constitution.
I respectfully dissent.

Unless the juvenile was not apprehended prior to the end of juvenile court jurisdiction.

Otherwise, the import of the Attorney General's approach would be that all laws moving in a particular "direction" - regardless of how and to what extent they move in that direction - are necessarily consistent with one another. At oral argument, the Deputy Attorney General acknowledged the consequences of this reasoning: The Legislature could constitutionally prohibit the transfer of 16-and 17-year-old juveniles upon appropriate evidence.