Filed 12/4/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NARITH S., | B296384 |
| Petitioner, | Los Angeles County |
| v. | Super. Ct. No. NA101252-02 |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Laura Laesecke, Judge. Petition granted.

Cyn Yamashiro and Markéta Sims, Independent Juvenile Defender Program, for Petitioner.

No appearance for Respondent.

Jackie Lacey, District Attorney, Phyllis Asayama and John Pomeroy, Deputy District Attorneys, for Real Party in Interest.

Narith S. petitions for a writ of mandate requiring the trial court to vacate its order denying his motion to remand his case to juvenile court. Narith was 15 years old at the time of the offenses with which he is charged. The trial court ruled Senate Bill No. 1391 (SB 1391) unconstitutional. We agree with our colleagues in the First, Third, Fourth, Fifth, and Sixth Districts who have recently confronted this issue and concluded that SB 1391 is constitutional. Accordingly, we grant Narith's petition.

## BACKGROUND

In 2015 the People charged Narith with nine counts of attempted murder as well as shooting at an inhabited dwelling and discharging a firearm from a motor vehicle.[1] The case arose from a gang-related drive-by shooting at an apartment complex. After detectives gave Narith the *Miranda* admonition,[2] he told them he had fired a number of shots from the back seat of his friend's car after yelling "Fuck Chongos" (a derogatory term for the gang that is his gang's rival). Five victims were struck with

---

[1] We have only a partial record of the proceedings below. Narith submitted dockets for the criminal and juvenile courts, a reporter's transcript of the February 2019 hearing on his second motion to remand, and copies of the motion, opposition, and reply filed in the superior court. The district attorney submitted with its return a partial transcript of Narith's preliminary hearing. Neither party has provided us with a copy of the felony complaint, the information, a reporter's transcript of the fitness proceedings in the juvenile court, or any minute order or written ruling in the juvenile court finding Narith unfit.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

bullets; all five survived. Narith was 15 years old at the time of the alleged crimes.

Narith was arraigned in criminal (adult) court in November 2015. A year later his counsel moved to remand his case to juvenile court. In January 2017 the trial court certified Narith to the juvenile court. In June 2018 the juvenile court found Narith unfit for juvenile court and returned him to criminal court.

On January 3, 2019, Narith filed a motion to remand his case to juvenile court, citing SB 1391. The district attorney opposed the motion, arguing SB 1391 is "an unconstitutional amendment to the provisions of Welfare and Institutions Code section 707, as amended by an initiative statute, Proposition 57." Narith filed a reply.

On February 20, 2019, the court heard the motion. The court ruled SB 1391 unconstitutional and therefore denied Narith's motion to be transferred back to the juvenile court. Narith filed a petition for a writ of mandate and a request for a stay of his adult proceedings. We issued an order to show cause and a stay.

## DISCUSSION

### 1. *Proposition 57 and SB 1391*

In November 2016 the voters approved Proposition 57, the Public Safety and Reconciliation Act of 2016. (*People v. Superior Court (Alexander C.)* (2019) 34 Cal.App.5th 994, 997 (*Alexander C.*).) Proposition 57 " 'largely returned California to the historical rule' " in effect before 2000 that "required a juvenile court to declare a minor unfit for the juvenile system before a district attorney could prosecute that minor in criminal court." (*Alexander C.*, at pp. 997-998.) Under Proposition 57, " ' "[c]ertain categories of minors . . . can still be tried in criminal

3

court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated." ' " (*Alexander C.,* at p. 998, quoting *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 305.)

Proposition 57 set forth five purposes: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles. [¶] 5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (*People v. Superior Court (S.L.)* (2019) 40 Cal.App.5th 114, 121, review granted Nov. 26, 2019, S258432 (*S.L.*), quoting Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141 (Voter Guide).) Proposition 57 "authorize[d] legislative amendment of its provisions that amended [Welfare and Institutions Code] section 707, 'so long as such amendments are consistent with and further the intent of this act by a statute that is passed by a majority vote of the members of each house of the Legislature and signed by the Governor.' " (*People v. Superior Court (K.L.)* (2019) 36 Cal.App.5th 529, 535 (*K.L.*), quoting Voter Guide, § 5, p. 145.)

In September 2018 the Governor approved SB 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1). It took effect January 1, 2019. SB 1391 "eliminates the district attorneys' ability to seek transfer of 14 and 15 year olds from juvenile court to criminal court" (subject to a narrow exception if the minor is " 'not apprehended prior to the end of juvenile court

4

jurisdiction' "). (*Alexander C., supra,* 34 Cal.App.5th at p. 998; Welf. & Inst. Code, § 707, subd. (a)(2).) The Legislature declared that SB 1391 amended Proposition 57 and "is consistent with and furthers the intent of Proposition 57." (S.B. 1391, § 3; *Alexander C.*, at p. 998.)

2. ***Five appellate courts have upheld SB 1391 as constitutional; one appellate court has disagreed***

A number of district attorneys—including the District Attorney of Los Angeles County—have challenged SB 1391 as unconstitutional.[3] Here, the district attorney argues, "In Prop. 57, voters provided juvenile judges discretion to determine whether 14 and 15 year-old offenders should be rehabilitated in the juvenile system. SB 1391 removed that discretion and in the process violated the California Constitution." The district attorney states, "Section 5 of Prop. 57 allows amendments by

---

[3] California's Attorney General does not share this view. (See *K.L., supra,* 36 Cal.App.5th at p. 533, fn. 2.) The Attorney General appeared as counsel for the Solano County Superior Court in *Alexander C.*, arguing the court properly terminated a 14-year-old juvenile's transfer proceeding to criminal court under SB 1391. (*Alexander C., supra,* 34 Cal.App.5th at pp. 996, 999.) The Attorney General also appeared as an "interested party" in *K.L., supra,* 36 Cal.App.5th at page 532, and as amicus curiae on behalf of the minors in *People v. Superior Court (T.D.)* (2019) 38 Cal.App.5th 360, review granted Nov. 26, 2019, S257980 (*T.D.*); *S.L., supra,* 40 Cal.App.5th 114; and *O.G. v. Superior Court* (2019) 40 Cal.App.5th 626, review granted Nov. 26, 2019, S259011 (*O.G.*). (See also *C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1039 ["The Attorney General also submits that Senate Bill No. 1391 is constitutional because it furthers the purposes of Proposition 57."].)

the Legislature 'so long as such amendments are consistent with and further the intent of this act . . . .' [¶] By entirely eliminating the ability to transfer any 14- and 15-year-olds to adult court, SB 1391 improperly upset the balance struck by the voters. . . . As such, it is unconstitutional."

In the nine months since the trial court here found SB 1391 unconstitutional, five appellate courts have rejected the argument the district attorney makes. In *Alexander C.*, decided April 30, 2019, the First District Court of Appeal considered the case of a 14-year-old charged with two counts of attempted murder, two counts of torture, and "various sex offenses." (*Alexander C.*, *supra*, 34 Cal.App.5th at p. 998.) After SB 1391 took effect, Alexander C. moved to dismiss the district attorney's motion to transfer him to criminal court. The Superior Court of Solano County terminated the transfer proceeding and the district attorney petitioned for a writ of mandate, arguing SB 1391 was an invalid amendment to Proposition 57 because it was not consistent with Proposition 57 and did not further the proposition's intent. (*Alexander C.,* at p. 999.)

The Court of Appeal denied the district attorney's writ petition. The court noted Proposition 57 "sought to promote juvenile rehabilitation by channeling more minors into the juvenile system." (*Alexander C.*, *supra,* 34 Cal.App.5th at p. 1000.) The court continued, "[SB] 1391 takes Proposition 57's goal of promoting juvenile rehabilitation one step further by ensuring that almost all who commit crimes at the age of 14 or 15 will be processed through the juvenile system," where they will receive treatment, counseling, and education. (*Ibid*.) The court concluded, "It is apparent that [SB] 1391 is consistent with and

6

furthers Proposition 57's goal of emphasizing rehabilitation for juvenile offenders." (*Ibid*.)

In an opinion filed June 19, 2019, the Third District Court of Appeal agreed. In *K.L.*, the district attorney had charged two 15-year-olds—K.L. and R.Z.—in separate cases, with murder, attempted murder, and shooting into an occupied vehicle, with gang and personal discharge of a firearm allegations, and murder, respectively. (*K.L., supra,* 36 Cal.App.5th at pp. 533-534.) Juvenile courts had found both minors unfit and granted the district attorney's motion to transfer them to criminal court. After SB 1391 took effect, however, the trial courts dismissed the transfer motions and sent the matters to juvenile court. (*K.L.*, at pp. 533-534.)

The district attorney petitioned for a writ of mandate. The appellate court denied the writ. The court noted, "Taken as a whole, and in the context of juvenile offenders, it appears the intent of Proposition 57 was to reduce the number of youths who would be prosecuted as adults." The court said SB 1391 "furthers the stated purpose and intent of Proposition 57 to have fewer youths removed from the juvenile justice system." The court stated, "[W]hile Proposition 57 did continue to permit transfer of 14 and 15 year olds to adult court for prosecution, there is nothing in the language of Proposition 57 or the ballot materials to suggest that it was a specific intent of Proposition 57 to ensure that 14- and 15-year-old juvenile offenders would continue to be subject to adult criminal prosecution. [SB] 1391 does not conflict with Proposition 57 but advances its stated intent and purpose to reduce the number of youths to be tried in adult court, reduce the number of incarcerated persons in state prisons, and emphasize rehabilitation for juveniles. Accordingly, we conclude [SB] 1391

7

is not an unconstitutional amendment of section 707 as modified by Proposition 57." (*K.L, supra,* 36 Cal.App.5th at p. 541.)

On August 5, 2019, in a two-to-one decision, the Fifth District Court of Appeal concluded SB 1391 did not unconstitutionally amend Proposition 57. In *T.D., supra,* 38 Cal.App.5th 360, a jury had convicted the 14-year-old defendant of shooting and killing a man during an attempted carjacking. T.D. appealed, Proposition 57 took effect while his appeal was pending, and the Court of Appeal remanded the case to the superior court for a juvenile transfer hearing. The district attorney later moved to transfer T.D. to criminal court. After SB 1391 went into effect, T.D. argued the court no longer had authority to transfer his case out of the juvenile justice system. The superior court agreed and the district attorney petitioned for a writ of mandate. (*Id.* at pp. 365-367.)

The Court of Appeal denied the writ petition. The court addressed the district attorney's contention "that the original version of Proposition 57 established 16 years old as the minimum age at which juveniles could be transferred to adult court, but this language was specifically deleted after a review process." (*T.D., supra*, 38 Cal.App.5th at p. 376.) The appellate court noted "the change was made after the Act in its original form was posted on the Attorney General's Web site for a 30-day public comment period. No public comments were received, but the Act's proponents spoke with a number of individuals and special interest groups. This eventually led to the version of the Act that was submitted to voters as Proposition 57." (*Ibid*.)

The court continued: "The District Attorney says the *drafters* of Proposition 57 clearly were aware of arguments for and against transfer of 14 and 15 year-olds to criminal court.

This is true.  Unlike inferences to be drawn from amendments made during the legislative process, however, we cannot conclude from drafting changes made prior to an initiative measure's submission to voters that *voters* were aware of, and so necessarily rejected, the measure's original provisions." (*T.D., supra,* 38 Cal.App.5th at p. 376.)  The court concluded that—when it construed the "ambiguous" "amendatory language" of section 5 of Proposition 57 "and the Act as a whole consistently with the voters' intent"—SB 1391 is constitutional.  (*Id*. at p. 378.)[4]

On September 20, 2019, the Sixth District Court of Appeal in a two-to-one decision agreed with the First, Third, and Fifth Districts.  (*S.L., supra,* 40 Cal.App.5th 114.)  There, a 15-year-old was charged with murder and three counts of attempted murder with firearm enhancements.  The trial court rejected the district attorney's constitutional challenge to SB 1391 and the prosecution petitioned for a writ of mandate.  The majority denied the writ, holding "SB 1391 is constitutional because it is consistent with and furthers the intent of Proposition 57." (*S.L.,* at p. 117.)  The dissenting justice stated "the controlling question is not of constitutional magnitude but rather is a matter of statutory interpretation." (*Id*. at p. 123.)  The dissenter found

---

[4]     The Fifth District rejected other challenges to SB 1391 in a companion case filed the same day, *People v. Superior Court (I.R.)* (2019) 38 Cal.App.5th 383, review granted Nov. 26, 2019, S257773 (*I.R.*).  Justice Poochigian dissented in both cases. Justice Poochigian concluded SB 1391 "clearly does not 'further' (Prop. § 57, § 2) the enumerated and inferable intents of Proposition 57," and therefore "is unconstitutional under article II, section 10, subdivision (c) of the California Constitution." (*I.R.,* at p. 398.)

SB 1391 "to be inconsistent with fundamental provisions of Proposition 57." (*S.L.,* at p. 125.)

On October 1, 2019, the Fourth District Court of Appeal agreed with the courts that have upheld SB 1391. (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742 (*B.M.*).) Fifteen-year-old B.M. was charged with special circumstances arson-murder. The juvenile court held SB 1391 unconstitutional and B.M. filed a writ petition. In a two-to-one decision the appellate court concluded "[SB] 1391 furthers each of Proposition 57's express purposes" and issued the writ. (*B.M.,* at p. 747.)

The majority first detailed the differences between the juvenile and criminal justice systems and the history of California's prosecution of minors over the last three decades. The court then considered each of Proposition 57's express purposes. The court noted its task under *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243 (*Amwest*) was "not to discern the intent of Proposition 57's transfer hearing *provision*," but rather to "discern the intent behind Proposition 57 *as a whole* and decide whether [SB] 1391 furthers that overarching intent under 'any reasonable construction.' " (*B.M.*, *supra*, 40 Cal.App.5th at p. 754, fn. 4, original italics.)

The *B.M.* majority was not persuaded by the district attorney's argument "that the voters approved Proposition 57 to create a mechanism to transfer 14 and 15 year olds to criminal court." While the court "[took] seriously [its] duty to ' " 'jealously guard' " ' the electorate's initiative power," it concluded "to construe the amendment allowance in Proposition 57 as [the trial court] and the district attorney do, would be no allowance at all." (*B.M.*, *supra*, 40 Cal.App.5th at p. 760.) The dissenting justice disagreed, stating, "I conclude [SB] 1391 is not consistent with

10

and does not further the intent of the voters who enacted Proposition 57"; it therefore was, in his view, "ineffective." (*Id.* at p. 771.)

One court has disagreed with all of these other courts: our colleagues in Division Six. On September 30, 2019, the court issued its opinion in *O.G., supra,* 40 Cal.App.5th 626. O.G., age 15, was charged with two murders. One victim had been shot to death and the other had been stabbed. The court held "that [SB 1391] is unconstitutional insofar as it precludes the possibility of adult prosecution of an alleged 15-year-old murderer." (*Id.* at p. 628.) The *O.G.* court said, "[w]e disagree with the four Court of Appeal opinions because, frankly, they did not ask nor answer the determinative question so aptly framed by Justice Chin for a unanimous Supreme Court in [*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564 (*Pearson*)]." (*Id.* at p. 629.)[5] The court "agree[d] with the cogent analysis of the dissent [in *S.L.*]." (*Ibid.*)

---

[5] *Pearson* considered whether legislation (coincidentally also enacted in a Senate Bill numbered 1391) authorizing a defendant sentenced to death or life in prison to receive postconviction discovery was an invalid attempt to amend Proposition 115. Proposition 115 provided " '[n]o order requiring discovery shall be made in criminal cases except as provided' " in the Proposition. (*Pearson, supra*, 48 Cal.4th at p. 567.) The Supreme Court concluded the legislation was not an impermissible amendment because (1) it authorized postconviction, not pretrial, discovery, and (2) habeas corpus proceedings were not the same as a "criminal case." (*Id.* at pp. 567, 571.)

11

**3.** ***We agree with the five appellate courts that have found SB 1391 constitutional***

On November 26, 2019, our Supreme Court granted review in four cases, *S.L.*, *T.D.*, *I.R.*, and *O.G.* While we await a ruling from the high court, we must decide the case before us. With no disrespect whatsoever to our colleagues in Division Six, we find the reasoning and conclusions of the First, Third, Fourth, Fifth, and Sixth Districts thorough and sound, and we join them in finding SB 1391 constitutional. We follow the analytical framework laid down by those courts.

" ' "In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the [a]ct. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the [a]ct." ' " (*T.D.*, *supra*, 38 Cal.App.5th at pp. 370-371, quoting *Amwest, supra,* 11 Cal.4th at p. 1252.) "In other words, ' "a strong presumption of constitutionality supports the Legislature's acts." ' " (*T.D.*, at p. 371, quoting *Amwest*, at p. 1253.)

"We also bear in mind the well-established separation of powers principle that '[c]ourts should exercise judicial restraint in passing upon the acts of coordinate branches of government; the presumption is in favor of constitutionality, and the invalidity of the legislation must be clear before it can be declared unconstitutional.' " (*B.M.*, *supra*, 40 Cal.App.5th at p. 748.) "Legislative findings are entitled to ' "great weight" ' and ' "will be upheld unless they are found to be unreasonable and arbitrary." ' " (*Id*. at p. 749, quoting *Amwest*, *supra*, 11 Cal.4th at p. 1252.) "This is especially true where the Legislature has directly considered the constitutional issue and found the

amendment consistent with the voter initiative, as it has here."
(*B.M.*, at p. 749.)

"This does not mean we apply a deferential standard of review, however.  Proposition 57's 'limitation on legislative authority "must be given the effect the voters intended it to have." ' " (*T.D.*, *supra*, 38 Cal.App.5th at p. 371, quoting *Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366, 1374.) " 'Accordingly, starting with the presumption that the Legislature acted within its authority, we shall uphold the validity of [SB 1391] if, by any reasonable construction, it can be said that the statute [is consistent with and furthers the intent] of Proposition [57].' " (*T.D.*, at p. 371.)  "We review the [trial] court's interpretation of Proposition 57 and [SB] 1391 de novo." (*B.M.*, *supra*, 40 Cal.App.5th at p. 748; *T.D.*, at p. 371 [question of law subject to our independent review].)

"[A]s is true with all statutory interpretation, we begin first with the language of the statute, giving its words ordinary meaning, and construing it within the context of the statute and overall statutory scheme as a whole." (*K.L.*, *supra*, 36 Cal.App.5th at p. 535.)  Proposition 57 expressly permits amendment[6] by the Legislature as long as those amendments "are consistent with and further the intent" of the proposition. (Voter Guide, *supra*, § 5, p. 145.)  We read this language to require the amendment to be consistent with Proposition 57's *intent*, not its specific provisions or language.  Were the phrase

---

[6]     Narith argues SB 1391 did not amend Proposition 57. We are doubtful about his contention.  We assume without deciding that SB 1391 *is* an amendment to the proposition. (Cf. *S.L.*, *supra*, 40 Cal.App.5th at p. 118; *Alexander C.*, *supra*, 34 Cal.App.5th at p. 1003, fn. 1.)

13

"amendments that are consistent with, and further the intent of, the proposition," our analysis might be different. But the proposition's phrase has no commas.

The *T.D.* court commented on this issue of punctuation. The court noted the key phrase "can be read to allow amendments that are consistent with the express language of the Act and that further the intent of the Act; or, it can be read to allow amendments that are consistent with the intent of the Act and that further the intent of the Act." (*T.D.*, *supra*, 38 Cal.App.5th at p. 372.) The court continued: "If the amendatory language is interpreted in the first manner, [SB] 1391 unconstitutionally amends the Act, because its removal of 14 and 15 year olds from the possibility of prosecution in adult court is inconsistent with the express language of the Act. Indeed, limiting authorized amendments to those consistent with the express language of the Act would appear to preclude *any* amendment that deletes or repeals any portion of the Act, no matter how consistent such action might be with the purpose of the Act itself. Had that been the aim of the language in question, it seems likely that Proposition 57 would have been drafted so as not to permit any amendments whatsoever absent voter approval." (*Ibid*.; cf. *Alexander C.*, *supra*, 34 Cal.App.5th at p. 1003 ["if any amendment to the provisions of an initiative is considered inconsistent with an initiative's intent or purpose, then an initiative such as Proposition 57 could never be amended"].)

As our Supreme Court explained in *Amwest*, when determining whether a legislative amendment is consistent with the purpose of a voter initiative, a court is not limited to the express statement of purpose included in the initiative; rather,

14

" 'evidence of its purpose may be drawn from many sources, including the historical context of the amendment, and the ballot arguments favoring the measure.' " (*Amwest*, *supra*, 11 Cal.4th at p. 1256.)

The district attorney argues SB 1391's elimination of prosecutors' ability to try juveniles under 16 in criminal court "thwart[s] . . . [the protection of] public safety."  Underlying this argument is an assumption that locking up 14- and 15-year-olds in adult prisons is the only way to protect the public.  The district attorney ignores the expressions of purpose and intent in Proposition 57 as well as SB 1391.

As the *B.M.* court noted, "the most obvious goal of Proposition 57's juvenile offender provisions" was "stopping 'the revolving door of crime by emphasizing rehabilitation.' " (*B.M.*, *supra*, 40 Cal.App.5th at p. 754, quoting Voter Guide, *supra*, § 2, p. 141.)  "The argument in favor of Proposition 57 in the voter information guide pointed out [that] 'the more inmates are rehabilitated, the less likely they are to re-offend . . . [and] minors who remain under juvenile court supervision are less likely to commit new crimes.' " (*B.M.*, at p. 754, quoting Voter Guide, *supra,* argument in favor of Prop. 57 at p. 58.)  Plainly, rehabilitating juvenile offenders so they don't continue to commit crimes benefits public safety.

Another explicit purpose of Proposition 57 was to " '[p]revent federal courts from indiscriminately releasing prisoners.' " (*B.M.*, *supra*, 40 Cal.App.5th at p. 754.)  Reducing the inmate population in adult prisons by keeping juveniles in the juvenile justice system promotes public safety by eliminating any need for federal judges to order inmates released before their parole dates.  The district attorney does not acknowledge these

15

plain benefits to public safety intended by Proposition 57 and furthered by SB 1391.

We join in and adopt the analyses and holdings of our colleagues in the First, Third, Fourth, Fifth, and Sixth Districts. To quote the *B.M.* court, acceptance of the district attorney's arguments "would unnecessarily and unwisely constrain our lawmakers, prohibiting them from making well-researched and informed policy decisions based on new scientific research and our changing understanding of criminology and penology.  In other words, it would freeze any effort at youth justice reform in the name of preserving the integrity of an initiative promoting youth justice reform." (*B.M.*, *supra*, 40 Cal.App.5th at p. 760.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its February 20, 2019 order denying Narith S.'s motion to remand his case to the juvenile court and to enter a new order granting the motion. This court's stay order is vacated upon the finality of this opinion.

**CERTIFIED FOR PUBLICATION**


                                        EGERTON, J.

We concur:



EDMON, P.J.



DHANIDINA, J.